PEOPLE v MEISSNER

Docket No. 298780. Submitted October 11, 2011, at Detroit. Decided
    October 25, 2011, at 9:00 a.m. Leave to appeal denied, 491 Mich
    938.
    A jury in the Oakland Circuit Court convicted Christopher M.
    Meissner of domestic violence, second offense, MCL 750.81(3);
    first-degree home invasion, MCL 750.110a(2); and obstruction of
    justice, MCL 750.505, for breaking into the complainant's home,
    assaulting her, and sending her threatening text messages when
    he learned that she was in the process of reporting his conduct to
    the police. The court, Nanci J. Grant, J., admitted into evidence
    pursuant to MCL 768.27c the complainant's verbal description to
    the police of the incident that gave rise to the charges, as well as a
    written description she had prepared at the police station that
    included additional incidents from months earlier. Defendant
    appealed.

    The Court of Appeals held:

    1. The trial court properly admitted the complainant's state-
    ments to the police under MCL 768.27c. MCL 768.27c allows trial
    courts to admit a hearsay statement into evidence if (1) the
    statement purports to narrate, describe, or explain the infliction or
    threat of physical injury on the declarant, (2) the action in which
    the evidence is offered is an offense involving domestic violence,
    (3) the statement was made at or near the time of the infliction or
    threat of physical injury and not more than five years before the
    current action or proceeding was filed, (4) the statement was made
    under circumstances that would indicate its trustworthiness, and
    (5) the statement was made to a law enforcement officer. The
    complainant's statements met the factual requirements of MCL
    768.27c(1)(a) because they described text messages that threat-
    ened physical injury and previous incidents in which defendant
    had choked her and pushed her down the stairs, and met the
    temporal requirements of MCL 768.27c(1)(c) because she made
    the statements at or very near the time she received one or more
    of the threatening text messages. The trial court was not required
    to calculate or consider the number of hours that elapsed between
    the time of the charged offense and the time the complainant gave
    the statements to the police.

2. MCL 768.27c(2) provides that circumstances relevant to the issue of trustworthiness include, but are not limited to, whether the statement was made in contemplation of pending or anticipated litigation in which the declarant was interested, whether and to what extent the declarant has a bias or motive for fabricating the statement, and whether the statement is corroborated by evidence other than statements that are admissible only under MCL 768.27c. Given that these circumstances are not the sole means by which to establish trustworthiness, a trial court is not required to make factual findings regarding them or to exclude a statement because they have not been established. In this case, the complainant's statements were corroborated in part by the police officer who had responded to the choking incident and observed red marks on both sides of complainant's neck. The trial court also asked about the complainant's demeanor when she made the statements and about whether she contemporaneously indicated any fear of defendant. The trial court then made a valid determination that the complainant's statements were trustworthy. When the declarant is an alleged domestic violence victim, the statutory reference to statements in contemplation of litigation does not pertain to the victim's report of the charged offense; it pertains to litigation in which the declarant could gain a property, financial, or similar advantage, such as divorce, child custody, or tort litigation. In this case, there was no evidence that the complainant's statements could give her an advantage in any related litigation.

3. The trial court did not err by admitting evidence of defendant's prior acts despite the fact that those acts differed from the charged offense. MCL 768.27b(1) provides that in a criminal domestic violence action, evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant if it is not otherwise excluded under MRE 403. Evidence may be excluded under MRE 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Because evidence offered against a criminal defendant is prejudicial by its very nature, exclusion of evidence otherwise admissible under MCL 768.27b is appropriate only when there is a danger that the evidence will be given undue or preemptive weight by the jury or if admitting it would be inequitable. Prior acts of domestic violence may be admissible under MCL 768.27b regardless of whether the acts were identical to the charged offense. The trial court was within its discretion in concluding that any potential unfair prejudice to defendant was substantially out-

weighed by the probative value of the evidence, which illustrated the nature of defendant's relationship with complainant and assisted the jury in assessing her credibility.

4. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that defendant assaulted complainant, which is an essential element of both home invasion and domestic violence. An assault is generally defined as either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery. A battery is an intentional, nonconsensual, and harmful or offensive touching of another person. In this case, the prosecution presented sufficient evidence to prove that defendant threw coins at complainant and pushed her, which constituted an offensive touching.

5. Obstruction of justice is a common-law charge that can be prosecuted under MCL 750.505 and is generally understood as an interference with the orderly administration of justice. Obstruction of justice is considered a category of offenses; a common example is witness coercion. Coercion involves an attempt to dissuade a witness from testifying, and words alone may be sufficient to constitute the crime. The prosecutor presented evidence that defendant sent several harassing text messages to the complainant shortly after breaking into her apartment and assaulting her, and the messages indicated that he would harm her if she made a statement to the police. A reasonable jury could find that by sending these messages defendant willfully and corruptly hampered, obstructed, and interfered with a proper and legitimate criminal investigation.

6. The prosecutor did not unduly appeal to the jury's sympathy by reading complainant's written statement to the police during his opening statement. The prosecutor was stating facts that he intended to prove at trial, which is permissible in opening statements, and the statement was not so inflammatory that reading it prejudiced defendant. Further, the prosecutor did not use the prestige of his office to bolster a police witness's credibility; his comments merely summarized testimony elicited by defense counsel during cross-examination. To the extent the prosecutor may have improperly denigrated defense counsel by stating that he could tell the defense was in trouble and arguably introduced facts that were not in evidence by stating that domestic violence victims recant or explain their initial accusations of abuse, reversal is not required because the trial court instructed the jury that the lawyers' statements are not evidence and jurors are presumed to follow instructions.

7. Defendant has not established that his counsel's performance was ineffective. To establish ineffective assistance of counsel, defendant must show that counsel's performance was deficient and that he was prejudiced by the deficiency. Although defense counsel failed to object to the prosecutor's comments during opening statements and closing argument, any resulting prejudice was cured by the jury instructions. Further, defense counsel adequately presented defendant's position that defendant had permission to be in complainant's apartment because he lived there, notwithstanding counsel's decision not to subpoena evidence, call additional witnesses, or request a special jury instruction on that point.

Affirmed.

1. EVIDENCE — HEARSAY — DOMESTIC VIOLENCE — TEMPORAL REQUIREMENTS.

A hearsay statement is admissible if (1) the statement purports to narrate, describe, or explain the infliction or threat of physical injury on the declarant, (2) the action in which the evidence is offered is an offense involving domestic violence, (3) the statement was made at or near the time of the infliction or threat of physical injury and not more than five years before the current action or proceeding was filed, (4) the statement was made under circumstances that would indicate its trustworthiness, and (5) the statement was made to a law enforcement officer; a court is not required to calculate or consider the number of hours that elapsed between the time of the charged offense and the time the complainant gave the statements to the police (MCL 768.27c[1]).

2. EVIDENCE — HEARSAY — DOMESTIC VIOLENCE — TRUSTWORTHINESS.

A hearsay statement in which a declarant describes to a law enforcement officer a threat or incident of domestic violence inflicted on him or her is admissible if it meets certain temporal requirements and is trustworthy; circumstances relevant to determining trustworthiness include but are not limited to whether the statement was made in contemplation of pending or anticipated litigation in which the declarant was interested, whether and to what extent the declarant has a bias or motive for fabricating the statement, and whether the statement is corroborated by evidence other than statements that are admissible only under MCL 768.27c; a court is not required to make factual findings regarding these circumstances or to exclude a statement because they have not been established; the statutory reference to statements in contemplation of litigation does not pertain to a domestic violence victim's report of the charged offense but rather to litigation in

which the declarant could gain a property, financial, or similar advantage (MCL 768.27c[1], [2]).

3. EVIDENCE — DOMESTIC VIOLENCE — PRIOR ACTS — PREJUDICE.

Evidence of a defendant's commission of other acts of domestic violence is admissible in a criminal domestic violence action for any purpose for which it is relevant if it is not otherwise excluded under MRE 403 because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence; because evidence offered against a criminal defendant is prejudicial by its very nature, exclusion of the evidence is appropriate only when there is a danger that the evidence will be given undue or preemptive weight by the jury or if admitting it would be inequitable; prior acts of domestic violence may be admissible regardless of whether the acts were identical to the charged offense (MCL 768.27b).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Jessica R. Cooper*, Prosecuting Attorney, *Thomas R. Grden* and *Tanya L. Nava*, Assistant Prosecuting Attorneys, for the people.

State Appellate Defender (by *Chari K. Grove*) and Christopher Meissner, *in propria persona*, for defendant.

Before: OWENS, P.J., and JANSEN and O'CONNELL, JJ.

O'CONNELL, J. Following a jury trial, defendant appeals by right his convictions of second-offense domestic violence, MCL 750.81(3); first-degree home invasion, MCL 750.110a(2); and obstruction of justice, MCL 750.505. We affirm.

I. FACTS AND PROCEDURAL HISTORY

On November 28, 2009, Candace Worthington appeared at the Waterford police station, visibly shaken

and upset. She reported that defendant, with whom she had a relationship, had broken her door and had sent her threatening text messages. She showed a police officer the text messages, which included "You trying to die?" and "now you will reap the repercussions," as well as defendant's pointed message in response to Worthington's telling him that she had gone to the police: " . . . I am going to beat the shit out of you." Worthington described to the police several experiences she had with defendant over the prior months, including one in which defendant had destroyed her phone, another in which he pushed her down the stairs, and another in which he put her in a chokehold. Worthington wrote a statement recounting the threatening text messages, the prior physical injuries, and the other information she had given to the police.

Worthington's statement also described an incident that had occurred just that morning, when Worthington had been awakened by a crashing noise and saw defendant in her bedroom. Defendant pushed her shoulder, asked for a cigarette, tossed coins at her, and then left. The prosecutor subsequently charged defendant with home invasion, obstruction of justice, and domestic violence.

Before trial, the prosecutor filed a notice of intent to use verbal and written statements Worthington had given to police on two separate occasions in August and November 2009. Defendant filed motions in limine to suppress Worthington's statements and to suppress information about a prior incident of abuse defendant had inflicted on a different woman. The trial court granted the motion concerning the incident with the other woman, but denied the motion concerning Worthington's August and November statements to the police.

By the time of trial in May 2010, Worthington was pregnant with defendant's child. When the prosecutor called her to testify, Worthington recast and recharacterized many of the facts from her November statements. She testified that when she went to the police in November, she was enraged because defendant was having a relationship with another woman. She further testified that because of her anger she had embellished and exaggerated the facts in her statement. For example, she testified that although defendant was living with her, she had told the police he was not living with her. She also testified that the text messages she had shown the police were out of context. She attempted to justify the text message that said, "You trying to die?" by explaining that the message was his response to her text message informing him that she would be walking home from a bar late at night. Similarly, she minimized the conduct that had occurred on the morning she wrote the statement and testified that defendant was just checking on her to make sure she was all right. At the close of the prosecutor's direct examination, Worthington testified that defendant had never beaten her and had never threatened her.

### II. ADMISSIBILITY OF PRIOR STATEMENTS AND PRIOR ACTS EVIDENCE

#### A. STANDARD OF REVIEW

Defendant's appeal requires interpretation and application of MCL 768.27c and MCL 768.27b. We review de novo issues of statutory interpretation. *People v Swafford*, 483 Mich 1, 7; 762 NW2d 902 (2009). We also review de novo defendant's assertion that as a matter of law, MCL 768.27c precluded the admission of Worthington's statements. *People v Roper*, 286 Mich App 77, 91; 777 NW2d 483 (2009). We review the trial court's ultimate decision to

admit the evidence for abuse of discretion. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010).

### B. ADMISSIBILITY OF STATEMENTS MADE TO THE POLICE

#### 1. APPLICABLE LAW

Our Legislature enacted MCL 768.27c as a substantive rule of evidence reflecting specific policy concerns about hearsay in domestic violence cases.[1] See generally *People v Pattison*, 276 Mich App 613, 619-620; 741 NW2d 558 (2007) (addressing MCL 768.27a). In MCL 768.27c, the Legislature determined that under certain circumstances, statements made to law enforcement officers are admissible in domestic violence cases. The statute allows trial courts to admit hearsay statements into evidence if all the following conditions apply:

(a) The statement purports to narrate, describe, or explain the infliction or threat of physical injury upon the declarant.

(b) The action in which the evidence is offered under this section is an offense involving domestic violence.

(c) The statement was made at or near the time of the infliction or threat of physical injury. Evidence of a statement made more than 5 years before the filing of the current action or proceeding is inadmissible under this section.

(d) The statement was made under circumstances that would indicate the statement's trustworthiness.

(e) The statement was made to a law enforcement officer. [MCL 768.27c(1).]

---

[1] " 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). The Michigan Rules of Evidence identify general circumstances in which hearsay is admissible. See MRE 801 through MRE 806.

The statute goes on to give examples of "circumstances relevant to the issue of trustworthiness" as well as to define the terms "declarant" and "domestic violence." MCL 768.27c(2) and (5)(a) and (b).[2]

2. INTERPRETATION AND APPLICATION OF MCL 768.27c(1)(a) AND (c)

Defendant argues that the trial court erred by admitting Worthington's November statements into evidence. According to defendant, the trial court should have excluded the statements because of the amount of time that elapsed between the charged offense and Worthington's report to the police later the same day.

Defendant's argument misconstrues subsections (1)(a) and (c) of the statute. Neither subsection requires that the statements at issue describe the charged domestic violence offense. Subsection (1)(a) places a factual limitation on the admissibility of statements; subsection (1)(c) places a temporal limitation on admissibility. Subsection (1)(a) requires only that the statement "narrate, describe, or explain the infliction or threat of physical injury upon the declarant." MCL 768.27c(1)(a). Similarly, subsection (1)(c) requires that the statement be made at or near the time of the infliction or threat of injury described in subsection (1)(a). We must interpret the statute according to the Legislature's plainly expressed meaning, and we must apply the statute as written. *People v Gardner*, 482 Mich 41, 50; 753 NW2d 78 (2008). Taken together,

---

[2] Certain testimony offered pursuant to MCL 768.27c may be subject to challenge based on the Confrontation Clause. US Const, Am VI; Const 1963, art 1, § 20. In this case, however, defendant acknowledges that the declarant (Worthington) was available for cross-examination; accordingly, this case does not present a Confrontation Clause issue. Cf. *Davis v Washington*, 547 US 813, 821-822; 126 S Ct 2266; 165 L Ed 2d 224 (2006).

subsections (1)(a) and (c) indicate that a hearsay statement can be admissible if the declarant made the statement at or near the time the declarant suffered an injury or was threatened with injury.

In this case, Worthington made her November statements at or near the time defendant threatened her with injury. The record demonstrates that Worthington sought police assistance in the late afternoon or early evening. Shortly before she arrived at the police station, or perhaps while she was at the station, she received extremely threatening text messages from defendant. She described these messages in her written statement. Even at trial, Worthington acknowledged that after she informed defendant she had contacted the police, he sent a message stating that he would beat her. Accordingly, the trial court was not required to calculate or consider the number of hours that elapsed between the time of the charged offense and the time Worthington gave the statements to the police. The court could instead determine that Worthington's statements met the requirements of subsection (1)(a) because the statements described text messages that threatened physical injury, and met the requirements of subsection (1)(c) because she made the statements at or very near the time she received one or more of the threatening text messages.

Moreover, as the prosecutor points out on appeal, Worthington's statements described physical injuries that defendant had inflicted on her in the months before she made the statement. In particular, she described an August 2009 confrontation with defendant, in which she thought she would die from the way he was choking her. Further, she described the charged offense in which defendant apparently forced entry into her apartment, pushed her shoulder, and tossed coins at

her. For the purposes of MCL 768.27c, her descriptions of the choking injury and of the charged offense fulfilled both the factual requirement in subsection (1)(a) and the temporal requirement in subsection (1)(c).

### 3. INTERPRETATION AND APPLICATION OF MCL 768.27c(2)

MCL 768.27c(2) provides guidance for trial courts to assess whether a statement was made under circumstances that would indicate the statement's trustworthiness. MCL 768.27c(2) provides that

> circumstances relevant to the issue of trustworthiness include, but are not limited to, all of the following:
>
> (a) Whether the statement was made in contemplation of pending or anticipated litigation in which the declarant was interested.
>
> (b) Whether the declarant has a bias or motive for fabricating the statement, and the extent of any bias or motive.
>
> (c) Whether the statement is corroborated by evidence other than statements that are admissible only under this section.

Defendant argues that Worthington's November statements lacked any circumstances of trustworthiness. Specifically, defendant argues that the written statement does not fulfill the three considerations in subsection (2) and that the trial court therefore erred by admitting the statement. We disagree, on four grounds.

First, Worthington's statements were corroborated, and thus the statements fulfilled subsection (2)(c). At trial, Worthington testified that defendant had sent her a threatening text message: when the prosecutor asked, "What is it that you said or did to deserve the Defendant to tell you [sic] that he was going to beat the shit out of

you?" Worthington answered, "I'm sure that I was telling him that I went to the police and wrote a statement." The prosecutor also presented corroborating testimony concerning the August incident by eliciting testimony from Worthington that during the August incident defendant put her up against the wall with one hand. In addition, the police officer who had responded to the August incident testified that he observed red marks on both sides of Worthington's neck.

Second, subsection (2) does not limit the factors a trial court may use to assess trustworthiness. Instead, subsection (2) is a nonexclusive list of possible circumstances that may demonstrate trustworthiness. The subsection expressly states that the circumstances relevant to trustworthiness are *not* limited to the three examples given in subsections (2)(a), (b), and (c). Given that these subsections are not the sole means to establish trustworthiness, a lack of proof on the subsections did not require the trial court to exclude the statements in this case.

Third, subsection (2) does not require a trial court to make factual findings regarding the three circumstances. Rather, the subsection permits the court to consider all factors that pertain to the trustworthiness of the proffered statement. In this case, before ruling on the admissibility of the statements, the trial court inquired about Worthington's demeanor at the time she made the statements and about whether she contemporaneously indicated any fear of defendant. Subsection (2) did not require the court to ask specific questions regarding the circumstances described in the statutory subdivisions. The trial court made a valid determination that Worthington's statements were trustworthy on the basis of the information presented to the court.

Fourth, contrary to defendant's contention, subsection (2)(a) does not require a trial court to discredit a state-

ment given by a victim to the police. Defendant contends that because Worthington made her statements to the police, she must have made the statements in contemplation of litigation. Defendant then concludes that subsection (2)(a) required the trial court to disregard or discredit Worthington's statements on the ground that they were made in contemplation of litigation.

Defendant's interpretation of subsection (2)(a) would require all domestic violence victims to endure the indignity of tainted trustworthiness if they took the step of reporting the charged offense to the police. This interpretation is in derogation of the statutory structure. According to subsection 1(e), the only statements admissible under the statute are statements made to law enforcement officers. To interpret subsection (2)(a) to impose credibility concerns on victims' police statements would be to ignore subsection 1(e), which renders those same statements admissible. This Court cannot interpret subsection (2)(a) to require trial courts to discount the credibility of the very statements the statute was designed to admit. See *People v Peltola*, 489 Mich 174, 181; 803 NW2d 140 (2011) (stating that courts must read parts of a statute to give effect to the statute as a whole). Accordingly, when the declarant is an alleged domestic violence victim, the reference in subsection (2)(a) to statements in contemplation of litigation does not pertain to the victim's report of the charged offense. Rather, the subsection pertains to litigation in which the declarant could gain a property, financial, or similar advantage, such as divorce, child custody, or tort litigation. In this case, there was no evidence that Worthington's statements could give her any advantage in any related litigation. Therefore, subsection (2)(a) was not applicable to Worthington's statements. In sum, the trial court properly applied

MCL 768.27c to find that Worthington's prior statements to the police were admissible.

### 1. APPLICABLE LAW

MCL 768.27b(1) provides, in pertinent part, that "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403." Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Relevant evidence may be excluded under MRE 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

Evidence offered against a criminal defendant is, by its very nature, prejudicial to some extent. *People v Fisher*, 449 Mich 441, 451; 537 NW2d 577 (1995). Exclusion of the evidence is appropriate only when *unfair* prejudice outweighs the probative value of the evidence, meaning "there is a danger that the evidence will be given undue or preemptive weight by the jury" or "it would be inequitable to allow use of the evidence." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

### 2. APPLICATION OF MCL 768.27b

Defendant asserts that the trial court erred by admitting evidence of his prior acts, because those acts

differed from the charged offense. We disagree. Prior acts of domestic violence can be admissible under MCL 768.27b regardless of whether the acts were identical to the charged offense. See, e.g., *People v Cameron*, 291 Mich App 599, 608-612; 806 NW2d 371 (2011).

Defendant also asserts that even if the evidence of prior acts of domestic violence was relevant, the evidence was unfairly prejudicial. We conclude that the trial court was within its discretion in finding the prior acts admissible. Any potential unfair prejudice to defendant was substantially outweighed by the evidence's probative value. The prior acts of domestic violence illustrated the nature of defendant's relationship with Worthington and provided information to assist the jury in assessing her credibility.

### III. SUFFICIENCY OF THE EVIDENCE

#### A. STANDARD OF REVIEW

This Court reviews de novo defendant's challenge to the sufficiency of the evidence. *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). We view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt. *Id.*

#### B. APPLICABLE LAW ON HOME INVASION AND DOMESTIC VIOLENCE

First-degree home invasion is defined in MCL 750.110a(2):

> A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters

a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:

(a) The person is armed with a dangerous weapon.

(b) Another person is lawfully present in the dwelling.

Second-offense domestic assault is defined in MCL 750.81(3):

An individual who commits an assault or an assault and battery in violation of [MCL 750.81(2)], and who has previously been convicted of assaulting or assaulting and battering his or her spouse or former spouse, an individual with whom he or she has or has had a dating relationship, an individual with whom he or she has had a child in common, or a resident or former resident of his or her household, under any of the following, may be punished by imprisonment for not more than 1 year or a fine of not more than $1,000.00, or both:

(a) This section or an ordinance of a political subdivision of this state substantially corresponding to this section.

(b) [MCL 750.81a, 750.82, 750.83, 750.84, or 750.86].

(c) A law of another state or an ordinance of a political subdivision of another state substantially corresponding to this section or [MCL 750.81a, 750.82, 750.83, 750.84, or 750.86].

C. EVIDENCE ON HOME INVASION AND
DOMESTIC VIOLENCE CHARGES

Both the home invasion charge and the domestic violence charge required the prosecution to prove that defendant assaulted Worthington. Defendant contends that the prosecution failed to show that he assaulted Worthington. Neither MCL 750.110a nor MCL 750.81(3) defines "assault." Instead, Michigan gener-

ally defines an assault as "either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005). "A battery is an intentional, unconsented and harmful or offensive touching of the person of another . . . ." *People v Reeves*, 458 Mich 236, 240 n 4; 580 NW2d 433 (1998).

In this case, the prosecution presented sufficient evidence to prove that defendant committed an assault. Defendant threw change at Worthington and pushed her. These acts constituted an offensive touching, from which a reasonable jury could find that defendant assaulted Worthington.

### D. APPLICABLE LAW ON OBSTRUCTION OF JUSTICE CHARGE

Obstruction of justice is a common-law charge that can be prosecuted under MCL 750.505 and "is generally understood as an interference with the orderly administration of justice." *People v Thomas*, 438 Mich 448, 455; 475 NW2d 288 (1991). Obstruction of justice is considered a category of offenses; a common example is witness coercion. *People v Tower*, 215 Mich App 318, 320; 544 NW2d 752 (1996). Coercion involves an attempt to dissuade a witness from testifying, and "[w]ords alone may be sufficient to constitute the crime." *Id.*

### E. EVIDENCE ON OBSTRUCTION OF JUSTICE CHARGE

The prosecution presented evidence that defendant sent several harassing text messages to Worthington. At least one of the text messages explicitly referred to a police investigation, while the other text messages implied police involvement in the dispute. For example, the investigating officer testified that some of the text messages stated:

"You made grave mistake and now you will reap the repercussions."

"If you really did that, then I am going to beat the shit out of you."

"How did I fuck you? Whatever. I'll be there in a bit. If you really called the cops, you will really get beat bad."

A reasonable jury could find that these messages constituted obstruction of justice. Defendant sent the messages to Worthington shortly after breaking into her apartment and assaulting her. The messages made it clear that he would harm Worthington if she made a statement to police. By sending the text messages to Worthington, defendant "wilfully and corruptly hamper[ed], obstruct[ed], and interfere[d] with a proper and legitimate criminal investigation." *People v Somma*, 123 Mich App 658, 662; 333 NW2d 117 (1983).

### IV. ALLEGED PROSECUTORIAL MISCONDUCT

#### A. STANDARD OF REVIEW

We review claims of prosecutorial misconduct to determine whether the defendant received a fair trial. *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995). Unpreserved arguments are reviewed for plain error that affected the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003).

#### B. APPLICABLE LAW

A prosecutor's role within our judicial system is to seek justice and not merely to convict. *People v Erb*, 48

Mich App 622, 631; 211 NW2d 51 (1973). Prosecutors have discretion on how to argue the facts and reasonable inferences arising therefrom, and are not limited to presenting their arguments in the blandest terms possible. *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). "A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Id.* at 64. However, it is improper for a prosecutor to appeal to the jury's sympathy for the victim. *People v Dalessandro*, 165 Mich App 569, 581; 419 NW2d 609 (1988).

### C. PROSECUTOR'S OPENING STATEMENT AND CLOSING ARGUMENT

Defendant first asserts that the prosecutor unduly appealed to the jury's sympathy by reading Worthington's written statement during his opening statement. We disagree. The prosecutor was stating facts that he intended to prove at trial, which is permissible in opening statements. *People v Ericksen*, 288 Mich App 192, 200; 793 NW2d 120 (2010). Reading this statement was not so inflammatory that it prejudiced defendant. Therefore, it was not improper for the prosecutor to read Worthington's statement.

Defendant next asserts that the prosecutor used the prestige of his office to bolster a police witness's credibility. "Included in the list of improper prosecutorial commentary or questioning is the maxim that the prosecutor cannot vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness." *Bahoda*, 448 Mich at 276. In *People v Boske*, 221 Mich 129, 133; 190 NW 656 (1922), the prosecutor inappropriately commented to the jury that the sheriff knew that he had the right defendant on trial for the crime. This argument urged

the jury to convict the defendant because the sheriff believed the defendant was guilty, instead of independently considering his guilt. *Id.* at 134. Defendant contends that the prosecution encouraged a guilty verdict in his closing argument in a manner similar to the improper comments in *Boske*. We disagree. The prosecutor's comments in this case summarized testimony elicited by defense counsel during cross-examination. Moreover, the trial court instructed the jury to consider the testimony of police officers the same as that of any other witness, to determine the facts of the case, to apply the law as given by the court, and to decide whether the prosecution proved the elements of the crime beyond a reasonable doubt. Jurors are presumed to follow the instructions of the court. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

Defendant additionally asserts that the prosecutor engaged in misconduct when he introduced facts that were otherwise not in evidence by explaining how domestic violence victims will recant or attempt to explain initial statements implicating their alleged abusers. An attorney may not refer to facts that are not in the record. *People v Knolton*, 86 Mich App 424, 428; 272 NW2d 669 (1978). In this case, the prosecutor did not introduce specific evidence regarding recantation of domestic violence victims' testimony. However, reversal is not required because the trial court clearly instructed the jury that "[t]he lawyer[s'] statements and arguments are not evidence." See *Graves*, 458 Mich at 486.

Defendant also asserts that the prosecutor denigrated defense counsel by stating that he could tell the defense was "in trouble." Prosecutors are allowed to argue "that a defendant's story is unworthy of belief as long as such argument is based on the evidence rather than on matters not of record or the prestige of the

prosecutor's office." *People v Pawelczak*, 125 Mich App 231, 238; 336 NW2d 453 (1983). To the extent that the prosecutor's comment exceeded the permissible bounds, any prejudicial effect was cured by the trial court's instructions that "[y]ou must not let sympathy or prejudice influence your decision" and that "[t]he lawyer[s'] statements and arguments are not evidence." See *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

### V. ARGUMENTS IN DEFENDANT'S STANDARD 4 BRIEF

### A. STANDARD OF REVIEW

Defendant presents two challenges in his Standard 4 brief.[3] First, defendant contends that the jury instructions were erroneous. However, defense counsel expressly agreed to the proposed jury instructions and thereby waived appellate review of the instructions. *People v Lueth*, 253 Mich App 670, 688; 660 NW2d 322 (2002). Second, defendant contends that his counsel was ineffective. We review challenges to the effectiveness of counsel to determine whether defendant has met the heavy burden of showing that counsel's performance was deficient and that he was prejudiced by the deficiency. See *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). We apply a presumption that counsel's challenged actions were sound trial strategy, and the alleged deficiency required must be so serious that counsel was not performing as guaranteed by the Sixth Amendment. *Id.*; US Const, Am VI. A defendant must show that the error was so prejudicial that the outcome would have been different if trial counsel had not committed the error. *Id.*

---

[3] See Administrative Order No. 2004-6.

B. APPLICABLE LAW ON EFFECTIVENESS OF COUNSEL

Both the United States and the Michigan Constitutions guarantee a defendant the right to counsel. US Const, Am VI; Const 1963, art 1, § 20. This right to counsel includes the right to effective assistance of counsel. *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984). Our Supreme Court has held that the Michigan Constitution guarantees a defendant the same right to counsel as the United States Constitution, and Michigan has adopted the standard for evaluating the effectiveness of counsel set out by the United States Supreme Court in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). *People v Pickens*, 446 Mich 298, 326; 521 NW2d 797 (1994).

*Strickland* set forth a two-part test to determine whether defense counsel was effective in a particular case. First, the defendant must show that counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 US at 688. Second, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Proof of both prongs is needed to show that a conviction " 'resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable . . . .' " *Bell v Cone*, 535 US 685, 695; 122 S Ct 1843; 152 L Ed 2d 914 (2002), quoting *Strickland*, 466 US at 687. The relevant inquiry "is not whether a defendant's case might conceivably have been advanced by alternate means," but whether defense counsel's errors were so serious that they deprived the defendant of a fair trial. *People v LeBlanc*, 465 Mich 575, 582; 640 NW2d 246 (2002).

C. REVIEW OF COUNSEL'S EFFECTIVENESS

Defendant first argues that trial counsel should have objected to comments that were inappropriately made by the prosecution during opening statements and closing argument. As discussed in part IV of this opinion, we have concluded that any prejudice resulting from the two comments was cured by the jury instructions. Accordingly, we conclude that the lack of objections does not require reversal.

Defendant next argues that his counsel was ineffective for failing to subpoena evidence and for failing to interview witnesses that would have established that he lived in the apartment with Worthington. We disagree. Defense counsel's decision regarding which witnesses to call is presumed to be sound trial strategy. *People v Seals*, 285 Mich App 1, 21; 776 NW2d 314 (2009). Defense counsel adequately presented the defense that defendant lived at the apartment. Defendant provides nothing beyond his assertions to establish that additional witnesses would have provided different evidence on this issue.

Last, defendant argues that his counsel was ineffective for failing to request a jury instruction on his defense theory, i.e., that he had permission to be in the apartment because he lived there with Worthington. Again, we disagree. The charged offense required the prosecutor to prove that defendant broke into and entered a dwelling, in keeping with CJI2d 25.2a. The record indicates that defense counsel researched the issue and stated that he was satisfied on that issue. Defense counsel was not ineffective regarding this decision.

Affirmed.

OWENS, P.J., and JANSEN, J., concurred with O'CONNELL, J.