# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RAMON ABEL TREJO-CHAVARRIA,

        Defendant-Appellant.

UNPUBLISHED
April 14, 2015

No. 320622
Ingham Circuit Court
LC No. 12-001137-FC

Before: O'CONNELL, P.J., and FORT HOOD and GADOLA, JJ.

PER CURIAM.

Defendant, Ramon Abel Trejo-Chavarria, appeals as of right his convictions, following a jury trial, of armed robbery, MCL 750.529, assault with intent to do great bodily harm less than murder, MCL 750.84, and killing a dog, MCL 750.50b. The trial court sentenced defendant to serve 180 to 600 months' imprisonment for armed robbery, 60 to 120 months' imprisonment for assault, and 24 to 48 months' imprisonment for killing a dog. We affirm.

## I. FACTS

At trial, Weslie Bonds testified that defendant and co-defendant Luis Guzman-Cortez[1] robbed him on October 30, 2012. According to Bonds, he knew both men from selling them marijuana on multiple occasions. Defendant and Guzman-Cortez showed up unannounced at Bonds's home at about 4:00 p.m. Normally, defendant and Guzman-Cortez would call before they arrived. As Bonds spoke with defendant, who was unarmed, he saw Guzman-Cortez, who was carrying a bat, in his peripheral vision.

The next thing that Bonds remembered was that he was on the floor. Bonds did not know who hit him. Defendant was standing over him with a bloody baseball bat and Guzman-Cortez was taking things from his bedroom. His also realized that his head was bleeding and his dog had been stabbed to death. On cross-examination, Bonds testified that Guzman-Cortez told defendant to hit him again with the bat, but defendant refused. Bonds lost consciousness. When he woke, Guzman-Cortez and defendant were gone.

---

[1] Guzman-Cortez's appeal is also pending before this Court.

Bonds went to the hospital and reported the assault. Lansing Police Department Officer Matthew Kreft testified that Bonds told him that the robbers were "Ramon" and another man that Bonds did not know. Bonds testified that electronics and jewelry were missing from his home. Kenneth Kurtz, a general manager of a second-hand store, testified that on October 31, 2012, defendant and Guzman-Cortez came into his store together and sold him a game console and controller.

Lansing Police Department Detective Mark Lewandowski testified that officers arrested Guzman-Cortez and defendant on November 5, 2012. According to Detective Lewandowski, they were riding together in a car that contained some of Bonds's missing items, bloody jackets, a bloody knife with white hairs on it, and a broken and bloody baseball bat. A jury found defendant guilty of robbing Bonds, assaulting him, and killing his dog.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant contends that the evidence was insufficient to sustain his convictions under an aiding and abetting theory because he did not know that Guzman-Cortez was armed or intended to rob Bonds. We disagree.

A claim that the evidence was insufficient to convict a defendant invokes that defendant's constitutional right to due process of law. *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992); *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). Thus, this Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution proved the crime's elements beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

Circumstantial evidence and reasonable inferences arising from that evidence can prove the elements of a crime, including the defendant's knowledge or intent. *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). We must resolve any conflicts in the evidence in the prosecution's favor. *Id*. Jurors may use common sense and everyday experience to evaluate evidence. *People v Simon*, 189 Mich App 565, 568; 473 NW2d 785 (1991).

A person who helps another commit a crime is just as guilty of the crime as the person who directly committed it:

> Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense. [MCL 767.39.]

If the prosecution seeks to convict a defendant under an aiding and abetting theory, among other elements, the prosecution must establish that "the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that the defendant gave aid and encouragement." *People v Moore*, 470 Mich 56, 68; 679 NW2d 41 (2004) (quotation marks and citation omitted).

In this case, the victim testified that defendant and Guzman-Cortez arrived at his home unannounced, when their usual practice was to call first. Defendant approached Bonds's door unarmed, while Guzman-Cortez approached him from the side with a baseball bat. When Bonds woke on the floor, he had been struck in the head with the bat. He could not remember who struck him. Defendant was standing over him and holding a bloody bat. After the robbery, defendant and Guzman-Cortez went together to sell some of the stolen property, and when they were arrested they were riding together in a car that also contained bloody weapons and jackets.

There was circumstantial evidence that the defendants acted in concert. And while jurors could have inferred that defendant took the bat in an attempt to help Bonds, they also could have inferred that defendant had struck Bonds with the bat. It is for the jury, not this Court, to determine the weight of the evidence and credibility of the witnesses. *People v Lemmon*, 456 Mich 625, 642-643; 576 NW2d 129 (1998). Viewing this circumstantial evidence in the light most favorable to the prosecution, a reasonable jury could conclude that defendant knew that Guzman-Cortez intended to commit the robbery and benefitted from carrying it out. We conclude that the prosecution presented sufficient evidence to prove the elements of aiding and abetting beyond a reasonable doubt.

## III. CRUEL OR UNUSUAL PUNISHMENT

Defendant also contends that his sentence constituted cruel or unusual punishment, considering his age and circumstances at the time of the crime. We disagree.

The defendant must challenge a sentence as unconstitutionally cruel or unusual before the trial court to preserve a challenge on this ground. *People v Bowling*, 299 Mich App 552, 557; 830 NW2d 800 (2013). Defendant did not do so in this case. We review unpreserved issues for plain error affecting a party's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error is plain if it is clear or obvious, and the error affected the defendant's substantial rights if it affected the outcome of the lower court proceedings. *Id*.

The Michigan Constitution provides broader sentencing protection than the federal constitution. *People v Nunez*, 242 Mich App 610, 618 n 2; 619 NW2d 550 (2000). If a sentence is constitutional under Michigan's constitution, it is also constitutional under the federal constitution. *Id*. Our Legislature subscribed to the principle of proportionality as enshrined in the Michigan and United States constitutions when it fashioned our sentencing guidelines. *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003). Accordingly, this Court presumes that sentences within the guidelines range are proportionate. *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008). "[A] sentence that is proportionate is not cruel or unusual punishment." *Id*.

A defendant must show that unusual circumstances exist in order to show that a presumptively proportionate sentence is disproportionate. *Bowling*, 299 Mich App at 558. To determine whether a penalty is cruel or unusual, courts should consider (1) the severity of the penalty and the gravity of the offense, (2) the penalty compared to other penalties under Michigan law, and (3) the penalty compared to penalties imposed for the same offense in other states. *Id*. at 557-558.

Defendant alleges that his low education, young child, single prior misdemeanor conviction, and the likelihood of deportation after he serves his sentence are unusual circumstances that render his 15-year sentence for robbery disproportionately severe. Unfortunately, similar facts and sentences are not unusual before this Court. Defendant also understates the gravity of this offense. Defendant took part in a robbery during which the robbers beat Bonds severely, gave him life-threatening head wounds, and left him unconscious in a puddle of his own blood. The sentencing range already takes into account that the robbers did not kill Bonds but rather "only" gave him life-threatening injuries. Finally, defendant does not compare his sentence to sentences in other states. In sum, we conclude that defendant's sentence did not constitute cruel or unusual punishment.

Affirmed.

/s/ Peter D. O'Connell
/s/ Karen M. Fort Hood
/s/ Michael F. Gadola