# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TAREN SEROYD-MOURICE GREER,

        Defendant-Appellant.

UNPUBLISHED
December 8, 2015

No. 323310
Wayne Circuit Court
LC No. 14-002872-FC

Before: RONAYNE KRAUSE, P.J., and MARKEY and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to imprisonment of 35 to 60 years for the second-degree murder conviction, consecutive to two years for the felony-firearm conviction. We affirm.

This case arises out of a homicide that occurred at a house at 20270 Moenart in Detroit. Robert McCall was living at the house, and defendant's brother Taven Greer was visiting.

McCall was upstairs on the morning of March 6, 2014, when he heard some "bumping" noises. He came downstairs to investigate and found the victim, Keith Childress, aggressively "tussling" with defendant. He heard defendant say, of Childress, "I'm tired of this nigger." Childress then went outside. Three or four minutes later, McCall heard a single gunshot. Somebody shouted for McCall to come downstairs. Everyone in the house was moving quickly and getting ready to leave. After a short time they all got into the car and drove away. While in the car, defendant said, "I don't think I shot him" or "I think I shot him," and "I don't think I killed him." Later that day, McCall heard defendant say to those present during the homicide, "didn't nobody see nothing."

Taven gave a similar account of what happened that morning. At trial and in a sworn statement given to police shortly after the homicide, Taven said defendant and Childress had a long history of conflict, and at least once before, their conflict led to a physical fight. They were in another fight the morning Childress died. Taven did not see the initial encounter between them, but he saw the immediate aftermath and could tell "something had gone down." Defendant then went to his bedroom, where his girlfriend and his child were. Taven went into the kitchen to get a drink of water. About five minutes later, he heard a single gunshot from outside. Taven immediately went into the living room, and saw defendant come in the front door

-1-

from outside. Defendant said, "We got to go." He did not seem upset, but there was urgency in his voice.

After defendant made his announcement, everyone in the house quickly prepared to leave. As the car pulled out of the driveway, Taven saw Childress "laid out" on the sidewalk. Taven also said that he had reason to believe there was a shotgun in the house.

Defendant testified as well. He said he was visiting the house, but that he did not live there. Sometimes he and Childress would "bump heads," generally over how Childress treated his mother. They got into an argument the morning Childress was killed because Childress was in a bad mood. Childress grabbed defendant, and they "wrestled." Childress went outside, and defendant went into his room. A few minutes later defendant heard a gunshot. There was panic in the house; somebody told defendant to leave and, thinking this was an emergency, he left with everyone else. Defendant said he did not shoot Childress or otherwise participate in the homicide.

Childress's body was discovered lying on the sidewalk near the house. A K-9 handler helped to investigate the scene of the crime. The handler concluded that there was gunpowder residue near the front door of the house. There was clear line-of-sight between the front door and Childress's body. The medical examiner said that Childress died of a shotgun wound, and that the shot came from 8 to 10 feet away or further.

Defendant first argues that there was insufficient evidence of his identity as the person who killed Childress. We disagree.

When reviewing a claim of insufficient evidence, this Court reviews the record de novo. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). We must view the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have concluded that the elements of the offense were proven beyond a reasonable doubt. *Id*. "The elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Goecke*, 457 Mich 442, 463-464, 579 NW2d 868 (1998). Of course, proof that the defendant is the perpetrator is an element of every criminal offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Circumstantial evidence and reasonable inferences from the evidence may constitute satisfactory proof of the elements of the offense. *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

The only element defendant disputes is identity. We conclude that, when viewed in a light most favorable to the prosecution, there was sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that defendant committed the crime. Defendant had a history of conflict with Childress, and they fought just before Childress was killed. Defendant said he was "tired of" Childress. Three to five minutes after the fight ended, people in the house heard a single gunshot from outside. Defendant, immediately after the gunshot, entered the house through the front door and said, "We got to go." Everyone got in the car and left. As they drove away, Taven saw Childress "laid out" on the sidewalk. Defendant said either, "I don't think I

shot him" or "I think I shot him," and "I don't think I killed him." Later that day, defendant said, "didn't nobody see nothing." Childress died just outside the house of a shotgun wound to the back of his neck, fired from 8 to 10 feet away or further. There was evidence that a firearm was discharged near the front door of the house, and Childress was found dead nearby. There was also testimony that there was a shotgun in the house at the time of the killing.

Defendant argues that the evidence of his identity as the murderer is unreliable. However, viewed in the light most favorable to the prosecution, this evidence is sufficient to convict defendant of second-degree murder and felony-firearm.

Defendant next argues that there was not enough evidence of premeditation to submit the charge of first-degree murder to the jury, so the trial court erred when it denied his motion for a directed verdict. We disagree.

We review de novo a trial court's decision on a motion for a directed verdict. *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001). We must determine whether the evidence presented, viewed in the light most favorable to the prosecutor, could convince a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt. *Id.*

We conclude that the prosecutor presented sufficient evidence, viewed in the light most favorable to the prosecutor, to convince a rational trier of fact that the essential elements of first-degree murder, including premeditation and deliberation, were proved beyond a reasonable doubt. "The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). "First-degree murder is a specific intent crime, which requires proof that the defendant had an intent to kill." *People v Herndon*, 246 Mich App 371, 386; 633 NW2d 376 (2001).

There must be some time span between the initial intent to kill and the ultimate action to establish the element of premeditation and deliberation. *People v Gonzalez*, 468 Mich 636, 641; 664 NW2d 159 (2003). This interval between the initial murderous thought and action must be long enough that it would afford a reasonable person time to take a "second look." *Id.* A defendant's attempt to conceal the killing may support a finding of premeditation. *Id.*

The circumstantial evidence in this case, considered in the light most favorable to the prosecution, could support a verdict of first-degree murder. Defendant had a motive to kill Childress based on their history of conflict. See *Unger*, 278 Mich App at 223 (a motive for murder is particularly relevant in a circumstantial case). A preconceived motive can provide circumstantial evidence of premeditation. *People v Taylor*, 275 Mich App 177, 180; 737 NW2d 790 (2007). Furthermore, defendant had time to take a "second look" before committing the murder because the evidence shows that three to five minutes elapsed between the time that the fight ended and the fatal shot. During that time defendant had to find the shotgun in the house, go outside, and fire at Childress. Finally, evidence that defendant attempted to conceal the crime can support a finding that the crime was premeditated. *Gonzalez*, 468 Mich at 641. Defendant told everyone they needed to leave the house just after Childress was shot, and later that same day instructed witnesses that "didn't nobody see nothing." Defendant attempted to conceal the crime. These facts are sufficient to support a finding of premeditation and deliberation.

Because sufficient evidence supported submitting the charge of first-degree murder to the jury, it is not necessary to address defendant's argument that improperly presenting the charge led to an impermissible compromise verdict that defendant is guilty of second-degree murder.

We affirm.

/s/ Amy Ronayne Krause
/s/ Jane E. Markey
/s/ Michael J. Kelly