*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 3, 2020

Plaintiff-Appellee,

v

No. 348238
Wayne Circuit Court
LC No. 18-007065-01-FH

RAYMOND TYRONE GRANT,

Defendant-Appellant.

Before: RONAYNE KRAUSE, P.J., and SAWYER and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his bench trial conviction of welfare fraud over $500, MCL 400.60(1). The trial court sentenced defendant to two years' probation. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This matter arises out of defendant's application for food assistance benefits from the Michigan Department of Health and Human Services (DHHS) in June 2015. Defendant had previously applied for, and received, such benefits dating back to at least 2004. Since that time, defendant had been issued multiple Electronic Benefits Transfer (EBT) cards that had been replaced when he reported them lost, stolen, or damaged. At the time of defendant's application in 2015, he had most recently been issued a card in late 2013. At trial, an eligibility specialist for DHHS testified that first-time applicants for benefits would be mailed an EBT card at the address listed on the application, but for an applicant like defendant who had previously been issued a card, the already-issued card would be reactivated and reloaded with money. EBT cards use unique numbers much like credit or debit cards, and also similarly use a four-digit personal identification number (PIN) to make purchases. Defendant's card from 2013 had an identification number ending in 2094.

DHHS policies prohibited the provision of food assistance to applicants with two or more felony drug convictions. It is not disputed that in his 2015 application, defendant denied having any felony convictions for drug-related offenses, but defendant had in fact been convicted of three such felonies. The testimony was somewhat unclear whether DHHS had a way to automatically verify applicants' criminal histories, but in any event, defendant's application was approved on

-1-

June 15, 2016. The same day, a sum of money was loaded onto defendant's account. At the time, defendant was residing at a drug treatment facility, and the address on his application was that of the facility. Defendant left the facility the day after his application was approved. Approximately a week and a half later, on June 27, 2015, a balance inquiry was made for card 2094, and thereafter it was used to make a number of mostly low-value purchases, mostly in the Inkster area. There was evidence that defendant primarily resided in Inkster. Further money was loaded onto the card on July 1, 2015.

On July 9, 2015, card 2094 was reported lost, and "a new card was mailed to the client." The replacement card's identification number ended in 3266. Trial testimony indicated that the replacement card would have been mailed to defendant at the treatment facility, at which he no longer resided. A representative of the facility testified that it was very common for EBT cards to be mailed to the facility for former residents, and "as a matter of policy, we would promptly return that card to the Department of Human Services." On July 10, 2015, an attempted transaction was made using card 2094, and that transaction was apparently declined. Card 3266 was first used on July 18, 2015, and thereafter it was made for further transactions in the Inkster area, many at locations that had been used with card 2094. In total, $1,099 in transactions were made using both cards between June and November 2015.

Defendant was charged with welfare fraud over $500, MCL 400.60(1). Relevant to this appeal, defendant argued that there was no evidence he was the person who used the replacement card ending in 3266.[1] The trial court concluded that the evidence showed defendant to have used the card. Defendant was therefore convicted as described, and this appeal followed.

## II. STANDARD OF REVIEW

We review de novo claims of insufficiency of the evidence. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). When reviewing a claim of insufficient evidence after a conviction at trial, we "must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Muhammad*, 326 Mich App 40, 60; 931 NW2d 20 (2018) (quotation marks and citation omitted). We must make all reasonable inferences and credibility judgments in support of the verdict. *Id*. "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010).

## III. ANALYSIS

Defendant argues there was insufficient evidence for the trial court to convict him of welfare fraud. He contends that the prosecution failed to introduce enough evidence that he possessed an EBT card during the relevant time period and used it access benefits. We disagree.

---

[1] Insofar as we can determine from the EBT transaction summary and EPPIC report introduced into evidence, the total amount of purchases made using card 2094 during or after June 2015 is less than $500.

A conviction for welfare fraud requires that the prosecution prove the following elements beyond a reasonable doubt: (1) the defendant made a false statement or representation to DHHS, (2) the defendant knew it was false when he or she made the statement or representation, (3) the defendant intended to defraud DHHS, (4) DHHS relied on the false statement or representation, (5) the result of the falsehood was improper payment of benefits to the defendant, and (6) the amount fraudulently received was in excess of $500. See M Crim JI 34.1. Additionally, "identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Defendant does not dispute the first four elements, and he does not dispute that the EBT cards issued to him were used to obtain more than $500 in benefits to which he was not entitled. Rather, as noted, defendant argues that the evidence was insufficient to establish that he was the person who used the EBT cards. In other words, defendant essentially argues that his identity was not established as to each element. We disagree.

The strongest evidence in support of defendant's position is trial testimony to the effect that the replacement card would have been mailed to the treatment center, and the treatment center would have returned the card to DHHS. Indeed, nothing in the trial exhibits seems to suggest that DHHS had any other address actively on file for defendant pertaining to his 2015 application or thereafter. However, the fact is that card 3266 was, in fact, actually used. Therefore, of necessity, some aspect of the trial testimony *must* be wrong: either card 3266 was not mailed to the treatment facility, or the treatment facility did not return the card to DHHS.

Notably, the evidence shows that defendant's previously-issued EBT card was used shortly after defendant left the center. The EPPIC report lists "new PIN" events, and none are shown after card 2094 was issued. Thus, the person who used card 2094 had physical access to it, knew defendant's PIN, was in the Inkster area, and knew that the card had been reactivated. Although circumstantial, those facts give rise to a strong inference that defendant was the person who used card 2094. See *People v Xun Wang*, ___ Mich ___, ___; ___ NW2d ___ (2020) (Docket No. 158013), slip op at p 8. Although it is not impossible that someone else used defendant's card, "[e]ven in a case relying on circumstantial evidence, the prosecution need not negate every reasonable theory consistent with the defendant's innocence." *People v Hardiman*, 466 Mich 417, 423-424; 646 NW2d 158 (2002) (quotation omitted).

In any event, it is overwhelmingly likely that defendant was the person who reported card 2094 lost. Trial testimony indicated that a person reporting a lost card would have to provide some identifying details, and the EPPIC report clearly shows that defendant was familiar with the process. The transaction history of card 2094 and card 3266 look very similar. It is implausible that, given defendant's knowledge and history, and his having gone through the application process, defendant would have simply opted to forego any benefits without inquiry after leaving the treatment facility. Finally, as noted, the evidence proves that either the replacement card must have been mailed somewhere other than the treatment facility, or the treatment facility departed from its policy and has lax security. The far more likely scenario is that witnesses were speculating about the address to which replacement cards would be mailed, and in fact DHHS permits recipients to provide a mailing address for replacement cards. Defendant accurately asserts that there is no *direct* proof that he received and used card 3266. However, given the direct evidence that *is* available, the least speculative possibility is that defendant was the person who received and used card 3266. We are required to resolve all conflicts in evidence in favor of the prosecution and draw all reasonable inferences in support of the verdict. *Bennett*, 290 Mich App at 472.

In summary, we conclude that the evidence was sufficient for a rational trier of fact to conclude that defendant was the person who used the two EBT cards to make the documented transactions.

Affirmed.

/s/ Amy Ronayne Krause
/s/ David H. Sawyer
/s/ Mark T. Boonstra