*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JOI MARIE BONNER,

Defendant-Appellant.

UNPUBLISHED
November 14, 2019

No. 344850
Wayne Circuit Court
LC No. 18-000668-01-FC

Before: M. J. KELLY, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right her jury-trial conviction of assault with intent to murder, arguing that the evidence produced at trial was insufficient to sustain her conviction on a theory of aiding and abetting. We affirm.

## I. BACKGROUND

This case arises out of the shooting of Desmon Green at a house on Otsego Street in Detroit, Michigan. Green had sold drugs to defendant for two years and considered defendant to be a friend. One evening, Green was selling narcotics at the Otsego house. Defendant arrived at the Otsego house and briefly talked with Green, and then left without incident. Later that evening, defendant knocked on the front door to the Otsego house. Green saw defendant outside but did not see anyone else at that time. Green opened the door to let defendant in from the front steps. Once Green opened the door, defendant spoke briefly to Green and went to the farthest side of the room opposite from the door. Green remained standing in the doorway. As Green turned to face the outside porch, defendant's significant other, Martin Luther Sims, ran up the front steps and shot Green three times. To escape further danger, Green ran to the back of the house and out the side door. There was no evidence that anything was taken from the Otsego house after Green fled.

Although the trial court initially charged defendant with several crimes, the trial court dismissed two charges on defendant's motion for a directed verdict and the jury acquitted defendant of a third charge. The jury, however, convicted defendant of assault with intent to

murder (AWIM), MCL 750.83. The trial court sentenced defendant to a term of 8 to 20 years in prison for the AWIM conviction. This appeal followed.

## II. ANALYSIS

Defendant argues that the prosecutor presented insufficient evidence for a jury to reasonably infer that she possessed either the requisite intent or that she participated in the commission of the assault while knowing that the principal actor, Sims, had the necessary intent to commit the assault.

## A. STANDARD OF REVIEW

This Court reviews de novo defendant's challenge to the sufficiency of the evidence. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). We view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. *Id*. Circumstantial evidence and reasonable inferences derived from such evidence can constitute sufficient proof of the elements of the crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

## B. APPLICATION

"[T]he offense of assault with intent to murder requires proof of an assault, committed with actual intent to kill, which, if successful, would make the killing murder." *People v Brown*, 267 Mich App 141, 155; 703 NW2d 230 (2005). Under an aiding and abetting theory, one who procures, counsels, aids, or abets in the commission of a crime may be convicted as if she had directly committed such offense. *People v Robinson*, 475 Mich 1, 5-6; 715 NW2d 44 (2006); MCL 767.39. To convict a defendant of an offense under an aiding and abetting theory, the prosecutor must demonstrate:

> (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that the defendant gave aid and encouragement. [*Robinson*, 475 Mich at 6, (cleaned up).]

"Mere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to establish that a defendant aided or assisted in the commission of the crime." *People v Norris*, 236 Mich App 411, 419-420; 600 NW2d 658 (1999). Yet, the amount of advice, aid, or encouragement provided by a defendant is immaterial so long as the defendant has provided assistance that has the effect of inducing the commission of the crime. *People v Moore*, 470 Mich 56, 71; 679 NW2d 41 (2004). To establish the requisite intent, the prosecutor must demonstrate that the defendant either specifically intended to aid or abet the

-2-

offense, or, in the alternative, had knowledge of the principal's intent to commit the offense. *Robinson*, 475 Mich at 15. The defendant's state of mind may be inferred from all the facts and circumstances in evidence, including "a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *Carines*, 460 Mich at 757-758 (cleaned up).

Defendant argues that the prosecutor failed to provide sufficient evidence that she participated in the assault with knowledge of Sims's intent to commit the assault. Specifically, defendant argues that she was merely present at the scene of the assault and the only reasonable inference to be drawn from her return to the Otsego house was that she intended to consume or procure drugs.

To the contrary, there was sufficient evidence that defendant assisted Sims in the commission of the assault while knowing that Sims intended to commit the assault. The prosecutor presented evidence that defendant did not ask for drugs at her first visit to the Otsego house on the day of the assault, which was a deviation from her typical conduct. Green had provided defendant with free drugs in the past, yet defendant did not request drugs or mention a desire to consume drugs during defendant's first visit to the Otsego house that day. The jury could reasonably infer from this evidence that defendant was engaging in reconnaissance of the Otsego house.

Additionally, in the two years during which defendant had known Green, the night of the assault was the first instance when defendant had come to the Otsego house twice in one evening. During her second visit to the Otsego house on the day of the assault, defendant entered the home quickly and proceeded to a space farthest from the front door, while Green remained in the doorway. Green testified that he would not have opened the door had he seen someone else outside. Immediately after defendant's entrance into the Otsego house, Sims ran up to the front steps and opened fire. Contrary to defendant's argument, such evidence does not exclusively support an inference that defendant returned to the Otsego house to consume drugs. "The fact-finder is not prevented from making more than one inference in reaching its decision. That is, if each inference is independently supported by established fact, any number of inferences may be combined to decide the ultimate question." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002) (cleaned up).

In this case, the jury could have reasonably inferred that defendant knocked on the door and entered the Otsego house to coax Green to open the door and allow Sims access to shoot while defendant evaded the gunfire. "We do not interfere with the jury's assessment of the weight and credibility of witnesses or the evidence, and the elements of an offense may be established on the basis of circumstantial evidence and reasonable inferences from the evidence. It is the jury's duty to determine the weight to be accorded any inferences." *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013) (citations omitted).

This evidence was sufficient for a jury to find defendant's conduct to constitute aiding or abetting the assault, as both reconnaissance and drawing Green into the range of fire would have had the effect of aiding the commission of the offense. The evidence presented was sufficient to support an inference that defendant was not merely present when Sims approached Green in the doorway of the Otsego house, but rather participated in the commission of the assault.

-3-

Defendant alternatively argues that the evidence presented fails to support a reasonable inference that defendant had the requisite mental state for conviction as an aider or abettor. Specifically, defendant argues that the evidence does not demonstrate defendant's intent to assist in the commission of the assault or knowledge of Sims's intent to commit the assault. See *Robinson*, 475 Mich at 15. The facts in evidence demonstrate that Sims and defendant were in a romantic relationship at the time of the assault. The cellular data from the telephones associated with Sims and defendant suggest frequent communication in the period between defendant's first and second visits to the Otsego house that evening, and places both telephones in the area of the Otsego house before the shooting occurred. Upon entering the Otsego house on defendant's second visit, defendant immediately moved to an area of the room farthest from the open doorway where Green stood. Directly after defendant entered the Otsego house, Sims arrived while visibly brandishing a lethal weapon and immediately began shooting at Green. See *People v Johnson*, 54 Mich App 303, 304; 220 NW2d 705 (1974) ("The intentional discharge of a firearm at someone within range is an assault. The usual result and purpose of such an assault is death. The unjustified and unexcused intention to kill when committing an assault" constitutes AWIM.) Green was shot in both the chest and stomach. See *People v Mills*, 450 Mich 61, 71; 537 NW2d 909 (1995) (noting that evidence of the victim's injuries can demonstrate an intent to kill). The frequent telephone communication and exchanges, and defendant's movement away from the area of the shooting upon entry, was sufficient for a jury to find that defendant was aware of Sims's intent to shoot Green prior to the commission of the assault. Therefore, the evidence presented supports a determination that defendant assisted Sims in the commission of the assault with knowledge of Sims's intent to commit the assault.

## III. CONCLUSION

Viewed in the light most favorable to the prosecution, there was sufficient evidence for the jury to convict defendant of assault with intent to murder under an aiding or abetting theory.

Affirmed.

/s/ Michael J. Kelly
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle

-4-