*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DECKER, Minors.

UNPUBLISHED
December 22, 2022

Nos. 360793; 360794
St. Joseph Circuit Court
Family Division
LC No. 2020-000824-NA

Before: JANSEN, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

These consolidated appeals[1] concern the termination of respondents' parental rights to their minor children, MD, LD, AHD, ADD, DD, and JD, pursuant to MCL 712A.19b(3)(c)(*i*) (failure to rectify conditions that led to removal), (3)(c)(*ii*) (additional conditions prohibit return of the children), (3)(g) (failure to provide proper care and custody), and (3)(j) (likelihood of injury if returned to the parents). In Docket No. 360793, respondent-mother appeals as of right the trial court's order terminating her parental rights. In Docket No. 360794, respondent-father appeals as of right the same order, which also terminated his parental rights to the children.

On appeal, mother argues that the trial court erred by concluding that statutory grounds existed to terminate her parental rights and that termination was in the children's best interests. Father asserts that the trial court relied on inadmissible evidence in its decision to terminate his parental rights, that the Department of Health and Human Services (DHHS) failed to make reasonable efforts to reunify him with the children in light of the recommendations in his psychological evaluation, and that he was denied the effective assistance of counsel because his attorney failed to present an expert witness to challenge the veracity of the children's statements in their trauma assessments and the claim that they were acting adversely to father during parenting time. For the reasons explained in this opinion, we affirm.

---

[1] *In re Decker Minors*, unpublished order of the Court of Appeals, entered April 5, 2022 (Docket Nos. 360793 and 360794).

-1-

# I. FACTUAL AND PROCEDURAL HISTORY

The DHHS sought removal of the children on the basis of allegations that the family was homeless and living in a hotel and that domestic violence occurred in the presence of the children. Mother admitted the allegations that the family was living in a hotel and that domestic violence had been ongoing for at least a year. Father also admitted that there was domestic violence that remained unresolved. The trial court accepted jurisdiction and ordered the parents to participate in services. The DHHS later filed a petition seeking to terminate the parental rights of both mother and father because the children had been removed for almost a year and they could not be safely returned to either mother or father. After holding a hearing, the trial court issued an order terminating mother's and father's parental rights. This appeal followed.

# II. MOTHER'S APPEAL

# A. STATUTORY GROUNDS

Mother first asserts that the trial court erred by concluding that statutory grounds existed to terminate her parental rights. We disagree.

This Court reviews the trial court's decision concerning statutory grounds for clear error. *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). Moreover, "[a]ppellate courts are obliged to defer to a trial court's factual findings at termination proceedings if those findings do not constitute clear error." *In re Rood*, 483 Mich 73, 90; 763 NW2d 587 (2009).

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App at 139. In this case, the trial court terminated mother's and father's parental rights on the basis of MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (3)(g), and (3)(j). In pertinent part, those provisions provide the following:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> (*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

In this case, the children were removed on the basis of allegations of domestic violence and that the family of eight was homeless and living in a hotel room. At mother's adjudication, she admitted that the family was living in a hotel and that there was ongoing domestic violence for over a year. At mother's disposition hearing, which was held in March 2021, the caseworker testified that mother needed to obtain housing, transportation, and employment. The trial court issued a dispositional order on the same day that required mother to obtain housing, transportation, and employment. Mother also was ordered to attend domestic-violence counseling and refrain from contacting father. The termination hearing occurred in February 2022. As a result, more than 182 days elapsed since the issuance of the dispositional order. See MCL 712A.19b(3)(c).

At the time of the termination hearing, mother had obtained transportation. However, she remained homeless, only worked six hours a week, and continued her relationship with father. She participated in the Keeping Families Together and Parent Management Training Oregon model (PMTO) programs with an infant mental health specialist. Even with these services, mother struggled to provide structure during her parenting-time visits and the visits became chaotic. In addition, mother participated in domestic-violence counseling and individual counseling. Throughout the case, mother admitted only one incident of domestic violence and declined to address the trauma suffered by the children. Instead, she asserted that the children were mistaken about what they had witnessed.

At the time of the termination hearing, MD was nine years old, LD was eight years old, AHD was six years old, ADD was five years old, DD was four years old, and JD was two years old. The children had been placed with their maternal grandparents for over a year. None of the service providers believed that the children could be safely returned to mother at the termination hearing, and there was no indication that the children could be returned within a reasonable time.

Considering mother's failure to end her relationship with father and acknowledge the trauma that her children experienced while living with her, combined with her failure to obtain appropriate housing, employment, and parenting skills to care for six children, the trial court did not clearly err by finding that MCL 712A.19b(3)(c)(*i*) and (3)(c)(*ii*) had been established by clear and convincing evidence. See *In re Williams*, 286 Mich App 253, 272-273; 799 NW2d 286 (2009) (holding that termination was appropriate under MCL 712A.19b(3)(c)(*i*) because the respondent-mother failed to make any meaningful change in the conditions that existed at the time of adjudication). Because we conclude that termination was proper under MCL 712A.19b(3)(c)(*i*)

and (3)(c)(*ii*), we decline to consider any additional statutory grounds. See *In re VanDalen*, 293 Mich App at 139.

On appeal, mother asserts that she should have been given more time to participate in intensive services for domestic violence. However, mother did participate in such services. At the beginning of the case, the caseworker testified that mother engaged in domestic-violence counseling. The infant mental health specialist who worked with mother testified that she spent a lot of time talking about the characteristics of domestic violence and how children are affected by fighting in the home. In fact, at the termination hearing, the therapist explained that the Keeping Families Together program usually takes six months to complete; however, she spent so much time discussing mother's relationship with father and how it affected the children that it would take at least another month for mother to complete the program. Mother also worked with a domestic-violence advocate. At the time of the termination hearing, mother was working through the group-therapy curriculum with her advocate. In addition, this was not mother's first case involving Child Protective Services. She previously participated in services that focused on domestic violence. The caseworker expressed her belief that additional time would not make a difference because mother received intensive, hands-on services throughout the case.

Further, a major concern throughout the case was that mother failed to acknowledge the domestic violence that occurred between her and father. In fact, at the termination hearing, mother stated that the only domestic-violence incident occurred in 2019. She stated that her relationship with father was "fine." As a result, mother has not shown that she would participate in any further domestic-violence services in any meaningful way or that more time would have made a difference.

Mother presents a similar argument in regard to housing assistance. The caseworker testified that she spoke to mother about housing resources many times. She stated that mother failed to follow up with those resources. In addition, because mother only worked a few hours a week, she was unable to save up any money in the event that housing became available. Accordingly, the trial court did not clearly err by finding that clear and convincing evidence established grounds to terminate mother's parental rights because she "failed to demonstrate sufficient compliance with or benefit from those services specifically targeted to address the primary basis for adjudication in this matter . . . ." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

## B. BEST INTERESTS

Mother next argues that the trial court erred by concluding that termination was in the children's best interests. We disagree.

This Court reviews the trial court's determination that termination was in the children's best interests for clear error. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "Even if the trial court finds that the [DHHS] has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021) (quotation marks and citation omitted). "In making its best-interest determination, the trial court may consider the whole record, including

evidence introduced by any party." *Id*. (quotation marks and citation omitted). While determining the child's best interests, the court may consider a variety of factors, including the "child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. (quotation marks and citation omitted). "The trial court may also consider the child's age, inappropriate parenting techniques, and continued involvement in domestic violence." *Id*. at 277. "It may further consider visitation history, the parent's engaging in questionable relationships, the parent's compliance with treatment plans, the child's well-being in care, and the possibility of adoption." *Id*.

In this case, that trial court considered a variety of factors while considering whether termination of mother's and father's parental rights was in the children's best interests. The court noted the children's young ages, which ranged from two years old to nine years old, that the children were placed together in a preadoptive home with their maternal grandparents, and the opinions of the caseworker and lawyer-guardian ad litem supporting termination. The court believed that there was a bond between the children and their parents, and that the children loved their parents. However, the court opined that such young children needed stability, permanence, safety, security, love, and affection. The court did not believe that either parent could provide any of these necessities even after participating in services.

The trial court's conclusion that termination was in the children's best interests was not clearly erroneous. As observed by the trial court, the children were young and had experienced significant trauma. The testimony provided at the termination hearing showed that the children were doing well in their placement with their maternal grandparents who agreed to adopt them. Although both parents participated in services, neither parent rectified the issues that caused the children's removal—lack of appropriate housing and domestic violence. At the time of the termination hearing, the children had been in care for over a year, and there was no indication if and when the children could be safely returned to their parents. Therefore, there was a preponderance of evidence to establish that termination of mother's and father's parental rights was in the children's best interests. See *id*. at 278-279.

## III. FATHER'S APPEAL

## A. STATUTORY GROUNDS

Father's first claim on appeal is that the trial court relied on inadmissible evidence to terminate his parental rights. We disagree.

"Child protective proceedings consist of two distinct phases: the trial, also known as the adjudicative phase, and the dispositional phase." *In re Utrera*, 281 Mich App 1, 15; 761 NW2d 253 (2008). "The question at adjudication is whether the trial court can exercise jurisdiction over the child (and the respondents-parents) under MCL 712A.2(b) so that it can enter dispositional orders, including an order terminating parental rights." *In re Ferranti*, 504 Mich 1, 15; 934 NW2d 610 (2019). "The court can exercise jurisdiction if a respondent-parent enters a plea of admission or no contest to allegations in the petition . . . or if the Department proves the allegations at a trial . . . ." *Id*. "If a trial is held, the respondent is entitled to a jury, the rules of evidence generally apply, and the petitioner has the burden of proving by a preponderance of the evidence one or more

of the statutory grounds for jurisdiction alleged in the petition." *Id*. (quotation marks and citation omitted).

"Once the trial court's jurisdiction is established, the case moves to the dispositional phase." *Id*. at 16. During this phase, the court must hold review hearings to review the respondent's progress with the case service plan and evaluate whether it is appropriate for the children to remain in foster care. *Id*. "If the child is removed from the family home, the court must conduct a permanency planning hearing within 12 months from the date of removal." *Id*. "This hearing results in either the dismissal of the petition and family reunification, or the court ordering the [DHHS] to petition for the termination of parental rights." *Id*.

If the DHHS files a termination petition, the trial court holds a termination hearing in which the court acts as fact-finder, and the rules of evidence generally do not apply. *Id*.; see also MCR 3.977(H)(2); MCR 3.977(I). "If the court determines that one or more statutory ground for termination exists and that termination is in the child's best interests, the court must enter an order terminating the respondent's parental rights and order that additional efforts for reunification not be made." *In re Ferranti*, 504 Mich at 16.

In this case, father admitted the allegation in the petition that there was a history of domestic violence and that it was unresolved. The trial court accepted that admission and assumed jurisdiction of father and the children. At disposition, the court ordered father to obtain suitable housing, employment, and transportation, submit to drug testing, and participate in counseling and parenting education provided by the DHHS. The DHHS later filed a petition to terminate father's parental rights. At the termination hearing, the trial court explained that it did not find the testimony provided by mother and father credible as it related to previous instances of domestic violence. The court stated that it believed the children's statements in the trauma assessments that were admitted as exhibits at the hearing.

First, the trial court did not err by considering the children's trauma assessments during the termination hearing. The rules of evidence generally do not apply at a termination hearing. *Id*. MCR 3.977(H)(2) provides, in pertinent part:

> At the hearing all relevant and material evidence, including oral and written reports, may be received by the court and may be relied upon to the extent of its probative value. The parties must be afforded an opportunity to examine and controvert written reports received by the court and shall be allowed to cross-examine individuals who made the reports when those individuals are reasonably available.

The infant mental health specialist testified that she participated in the trauma assessments, and reviewed the assessments with mother and father. The specialist testified at the termination hearing and was available for cross-examination. Accordingly, the trial court did not err by considering the children's trauma assessments during the termination hearing.

Second, the trial court did not clearly err by finding that termination of father's parental rights was proper under MCL 712A.19b(3)(c)(*i*). The court issued the dispositional order involving father in March 2021. The termination hearing was held in February 2022. As a result,

more than 182 days elapsed between the issuance of the initial dispositional order and the termination hearing. See MCL 712A.19b(3)(c).

The testimony at the termination hearing established that father had inconsistent employment throughout the case and that he failed to provide any proof of income. He also failed to obtain appropriate housing as he lived with friends and there was no room for the children. Moreover, although father initially admitted that there was a history of domestic violence that was unresolved, he later failed to acknowledge the domestic violence that occurred in his relationship with mother and the effect that the violence had on the children. Four of the children were diagnosed with post-traumatic stress disorder, and father declined to accept that the children were afraid of him. Father participated in services for anger management and domestic violence, but continued to exhibit anger issues, such as yelling at the visitation aide to the extent that the children were afraid that he was going to hit her. Finally, father maintained a relationship with mother in violation of a court order. Ultimately, as with mother, father failed to show any meaningful change in the conditions that existed at the adjudication and disposition. See *In re Williams*, 286 Mich App at 272-273.

## B. REASONABLE EFFORTS

Next, father contends that the DHHS failed to make reasonable efforts to reunify him with the children. We disagree.

This Court reviews a trial court's decision concerning reasonable efforts for clear error. See *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). However, father failed to raise a claim concerning the adequacy of services at any point during the lower court proceedings. As a result, this claim is unpreserved. See *In re Terry*, 240 Mich App 14, 27; 610 NW2d 563 (2000). This Court reviews unpreserved claims for plain error affecting substantial rights. *In re Utrera*, 281 Mich App at 8. "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id*. at 9. "When plain error has occurred, [r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant *or* when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (quotation marks and citation omitted; alterations and emphasis in original).

"In general, when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re Fried*, 266 Mich App at 542, citing MCL 712A.18f(1), (2), and (4). "As part of these reasonable efforts, the Department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017).

In this case, father participated in a variety of services through the DHHS and his probation, including weekly parenting time, the Keeping Families Together program with an infant mental health specialist, individual counseling, anger management, and batterer intervention. His psychological evaluation recommended that he attend an intensive batterer-intervention program. However, the caseworker testified that the program was not contracted with the DHHS, and she was exploring different options. Father was never offered this recommended program. In any

event, father continued to deny that any domestic violence occurred outside the 2019 incident that led to his arrest. The caseworker did not believe that the additional program would be helpful considering his denial. In addition, father still had anger issues after completing anger management and batterer intervention.

He denied that he was dependent on alcohol and failed to present proof that he was attending alcoholics anonymous. Father was also provided with drug screening, but those screens did not test for alcohol. Although father's possible alcohol use was discussed during the case, the trial court did not refer to substance abuse in its ruling. Father reported that he suffered from anxiety and depression, and his psychological evaluation recommended that father submit to a medical review, but he refused to do so. As a result, father declined to participate in all the services recommended to him. Although father now complains that he should have been offered the intensive batterer program and alcohol-specific screening, he does not explain how these additional services would have altered the outcome in the case. "When challenging the services offered, a respondent must establish that he or she would have fared better if other services had been offered." *In re Sanborn*, 337 Mich App at 264. Given that father was offered multiple services and failed to show benefit from those services, the trial court did not err by concluding that the DHHS made reasonable efforts to reunify father with the children. See *In re Frey*, 297 Mich App at 248 (explaining that the respondent parents have a responsibility to participate in and benefit from the services offered).

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Father finally asserts that he was denied the effective assistance of counsel at the termination hearing. We disagree.

"In analyzing claims of ineffective assistance of counsel at termination hearings, this Court applies by analogy the principles of ineffective assistance of counsel as they have developed in the criminal law context." *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016). "In order to preserve the issue of effective assistance of counsel," defendant "should make a motion in the trial court for a new trial or for an evidentiary hearing." *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000). In this case, father failed to raise a claim involving the ineffective assistance of counsel at any point during the proceedings. Therefore, this claim is unpreserved.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's "factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). However, because father failed to move for a new hearing or an evidentiary hearing, this Court's review of his ineffective assistance of counsel claim is limited to errors apparent on the record. *Sabin (On Second Remand)*, 242 Mich App at 659.

To prevail on a claim of ineffective assistance of counsel, a defendant must establish that "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *Id.*

"A defendant must overcome a strong presumption that the assistance of his counsel was sound trial strategy, and he must show that, but for counsel's error, the outcome of the trial would have been different." *Id.* "[C]ounsel's decision regarding which witnesses to call is presumed to be sound trial strategy." *People v Meissner*, 294 Mich App 438, 460; 812 NW2d 37 (2011).

Father argues that his counsel was ineffective for failing to object to the alleged expert opinions provided by the infant mental health specialist and the caseworker. However, the testimony provided by these witnesses concerning their belief that the children were afraid of father during parenting time was based on their observations during visits. The infant mental health specialist provided support for her opinion, testifying that the children were hypervigilant during visits with father and that they avoided making him angry. The children also expressed their fear that father was only being nice because he was being watched. On cross-examination by father's counsel, the specialist acknowledged that the children would run up and greet father when he arrived, and that the children cried when one visit had to be conducted virtually due to illness. The trial court, as the finder of fact, was tasked with determining the credibility and weight of this testimony. See MCR 3.977(H)(2); MCR 3.977(I). Similarly, father received and reviewed the children's trauma assessments before the termination hearing and expressed his disagreement with the children's statements, of which the court was aware. The infant mental health specialist who participated in the assessments was available for cross-examination at the termination hearing. Accordingly, father's counsel's performance was not deficient in this regard. See *Sabin (On Second Remand)*, 242 Mich App at 659; see also *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003) (explaining that "[i]neffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion").

Father further asserts that his counsel was ineffective for failing to obtain an expert to challenge the opinions of the caseworker and infant mental health specialist, as well as the children's statements in the trauma assessments. However, father merely asserts that counsel should have obtained the services of an expert. He does not identify a possible expert or specify the testimony that such an expert would provide that would have been helpful to his case. As a result, there is no basis to conclude that father's counsel was ineffective for failing to consult an expert or that an expert's testimony would have altered the outcome in the case. See *People v Posey*, 334 Mich App 338, 369; 964 NW2d 862 (2020) (holding that the defendant has the burden of establishing the factual predicate for a claim of ineffective assistance of counsel and that an expert witness would have been helpful). Accordingly, father failed to establish that he was denied the effective assistance of counsel at the termination hearing. See *Sabin (On Second Remand)*, 242 Mich App at 659.

Affirmed.

/s/ Kathleen Jansen
/s/ Deborah A. Servitto
/s/ Michael F. Gadola