*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BIANCA JALISSA MAY,

        Defendant-Appellant.

UNPUBLISHED
April 13, 2023

No. 360801
Macomb Circuit Court
LC No. 2021-000810-FH

Before: CAVANAGH, P.J., and BOONSTRA and RIORDAN, JJ.

PER CURIAM.

Defendant, Bianca Jalissa May, appeals as of right her bench trial conviction for the illegal use of a financial transaction device in violation of MCL 750.157q. Defendant was sentenced to two years' probation. We reverse and remand for entry of a verdict of not guilty.

## I. RELEVANT FACTS AND PROCEEDINGS

This case arises out of the use of an electronic benefit transfer card (also known as an EBT or bridge card), or card number, that was issued to Renard Dickerson. Defendant and Dickerson agreed that Dickerson allowed defendant to use the card while they were in a relationship, but they disagreed about when the relationship ended. Defendant testified that they were still in a relationship when she used the card, while Dickerson testified that their relationship had been over for months. Dickerson testified that defendant used his card without his knowledge or permission by manually entering the card number at the store checkout. However, defendant testified that Dickerson met her in person to give her the card and encouraged her to purchase candy for her children. Defendant used the card for two purchases: one for $98.65 and one for $136.61. When Dickerson tried to use the card later the same day, he discovered that his balance on the card was zero.

In the two days before the police report was filed, Dickerson testified that he called defendant to question if she used the card and defendant denied use. Dickerson testified that defendant texted his girlfriend, stating: "thanks for the food stamps, food stamp card. My kids eating good, eating steaks tonight." Dickerson also testified that after charges were filed in the present case, defendant texted Dickerson asking him if he would drop this charge if she dropped

-1-

charges against him in other counties. Defendant denied sending all messages. Defendant testified that the relationship between her and Dickerson was ongoing and that he encouraged her to use the card for defendant's children. Defendant testified that there were issues in the relationship that may have contributed to Dickerson's false report.

The trial court convicted defendant based on the court's assessment of the witnesses' credibility. The trial court stated that it was clear that purchases were made with the bridge card and, regardless of whether use of the card was permitted, the amount spent significantly exceeded the amount necessary to buy candy. The trial court also believed that defendant sent the text messages that she denied sending. Convinced that defendant lied about the messages, the trial court reasoned that defendant had the propensity to lie about various other matters, including that she had permission to use Dickerson's bridge card. The trial court concluded that defendant committed the charged crimes, either by using Dickerson's bridge card without his permission, or by having Dickerson's permission to use the card, but spending more than the amount to which he consented. Specifically, the trial court stated:

> [E]ven if I did believe that [defendant] did have the authorization from Mr. Dickerson to use the card to buy candy, it's clear, on the basis of this record that the use was way beyond that which was authorized. And, that's the thing that I'm absolutely sure of.
>
> Beyond that, there are a lot of things that I would say I'm not sure of beyond a reasonable doubt.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence was insufficient to find her guilty of the illegal use of a financial transaction device in violation of MCL 750.157q. We agree.

This Court reviews a challenge to the sufficiency of the evidence de novo. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). This Court reviews the evidence "in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *Id*.

The trial court convicted defendant of illegal use of a financial transaction device in violation of MCL 750.157q, which provides:

> A person who delivers, circulates, or sells a financial transaction device which was obtained or held by that person under circumstances prescribed under [MCL 750.157n, MCL 750.157p, or MCL 750.157v], or uses, permits, causes, or procures the financial transaction device to be used, delivered, circulated, or sold, knowing the device to have been obtained or held under circumstances proscribed under section 157n, 157p, or 157v is guilty of a felony.

During opening statement, the prosecutor explained that MCL 750.157n was most applicable to the instant case. MCL 750.157n, provides:

A person who steals, knowingly takes, or knowingly removes a financial transaction device from the person or possession of a deviceholder, or who knowingly retains, knowingly possesses, knowingly secretes, or knowingly uses a financial transaction device without the consent of the deviceholder, is guilty of a felony.

When reviewing challenges to the sufficiency of the evidence, this Court must not interfere with the fact-finder's role in deciding the weight and credibility to give to a witness's testimony; this Court may not "determine the credibility of witnesses . . . , no matter how inconsistent or vague that testimony might be." *People v Mehall*, 454 Mich 1, 6; 557 NW2d 110 (1997). This Court may not decide credibility because, as this Court has observed, even liars "tell[] many truths," and it is for the fact-finder to "sift the true from the false[.]" *People v Miceli*, 35 Mich App 176, 178; 192 NW2d 335 (1971) (quotation marks and citation omitted).

Circumstantial evidence and the reasonable inferences that arise from the evidence can constitute satisfactory proof of the elements of the crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). This Court must consider all the inferences that can be fairly drawn from the evidence when considering the sufficiency of the evidence because, when evidence is relevant and admissible, "it does not matter that the evidence gives rise to multiple inferences or that an inference gives rise to further inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). In such cases, it is for the fact-finder alone to "determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded [to] those inferences." *Id.*

In this case, defendant opted for a bench trial rather than a jury trial. Although the same preceding legal principles apply in both a bench trial and a jury trial, the Michigan Supreme Court has explained that there is a "sharp contrast" between bench trials and jury trials when it comes to consideration of the evidence and rendering a verdict:

A jury is required to consider all the evidence and to render a unanimous verdict, without the need for explanation. In a bench trial, however, the trial court is obligated to find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment. The court must state its findings and conclusions on the record or in a written opinion made a part of the record. Because of this, reviewing courts are provided greater insight into the specific evidence found by the trial court to support verdicts in bench trials. [*People v Wang*, 505 Mich 239, 250; 952 NW2d 334 (2020) (quotation marks and citations omitted).]

Defendant argues on appeal that the evidence was insufficient to convict her under MCL 750.157q because she had permission to use the bridge card. Defendant maintains that she did not steal or take the bridge card or use the card, or the card number, without Dickerson's consent. Defendant contends that the statute addresses authorized or unauthorized use only, and she was authorized to use the card, and she points out that the trial court did not find as a matter of fact that she did not have permission to use the bridge card. Defendant argues that the trial court's finding that she violated the statute because she spent more than what it believed it cost to purchase candy is not consistent with the plain language of the statute, which addresses use, not the extent of use. Additionally, even if spending more than the card owner consented to did fall

within the language of the statute, the trial court made no factual finding about how much defendant was allowed to spend. Defendant maintains that her purchase of candy and additional food items was an authorized use of the card. Defendant's argument has merit.

The trial court specifically stated that the basis of the court's decision to convict defendant was the court's assessment of defendant's credibility and propensity to lie. The trial court unequivocally believed that defendant lied about the text message evidence introduced at trial and that, given defendant's untruthfulness about that, the court could reasonably infer that defendant lied about having permission to use the bridge card.

Nevertheless, the trial court did not find that the evidence established beyond a reasonable doubt that defendant did not have permission to use the card. In fact, the only finding of fact that the trial court was "absolutely sure of" was that defendant used the card beyond the amount authorized. The court acknowledged that, "[b]eyond that, there were a lot of things that [the court's] not sure of beyond a reasonable doubt." However, the plain language of the statute does not make it illegal for someone to exceed one's spending authority when using a financial transaction device with the permission of the device holder. In fact, the scope of spending authority is not mentioned in the language of the statute at all. Although the trial court did not find defendant credible and intimated that the court did not believe that she had Dickerson's permission to use the bridge card, it is at best unclear whether the trial court found beyond a reasonable doubt that defendant used the card without Dickerson's consent.

In a criminal case, due process requires that a prosecutor introduce evidence sufficient to justify a rational trier of fact in finding guilt beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748, amended 441 Mich 1201 (1992). In this case, notwithstanding the trial court's finding that defendant was not credible in some respects about "things that really didn't matter all that much" and that she, therefore, could be generally disbelieved, the evidence was insufficient for the fact-finder to state beyond a reasonable doubt that defendant used Dickerson's card without permission. See *Meissner*, 294 Mich App at 452. That is, the facts as found by the trial court did not support the verdict rendered. See *Wang*, 505 Mich at 250. For this reason, we reverse and remand this matter for entry of a not guilty verdict. See *People v Mitchell*, 301 Mich App 282, 294; 835 NW2d 615 (2013) (noting that acquittal is the proper remedy when the defendant's conviction was not supported by sufficient evidence).

Reversed and remanded for entry of a verdict of not guilty. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Mark T. Boonstra
/s/ Michael J. Riordan