*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 20, 2025
12:04 PM

Plaintiff-Appellee,

v

No. 369360
Shiawassee Circuit Court
LC No. 2023-007792-FH

PAUL WILEY BREWER,

Defendant-Appellant.

Before: GARRETT, P.J., and RICK and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a) (sexual penetration of victim at least 13 years of age and under 16 years of age), and one count of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(a) (sexual contact with victim at least 13 years of age but less than 16 years of age; perpetrator is five or more years older). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 25 to 50 years' imprisonment for each of the CSC-III convictions and 3 to 15 years' imprisonment for the CSC-IV conviction. The court ordered these sentences to be served concurrently with each other, but consecutively to a prison sentence that defendant was already serving. We affirm.

## I. FACTUAL BACKGROUND

The sexual assaults in this matter occurred after the 14-year-old victim moved in with her mother. The victim's mother was dating defendant at the time. The victim testified that, from October to November 2022, defendant repeatedly sexually assaulted her by engaging in penile-vaginal intercourse with her, digitally penetrating her, and placing her hands on his penis. Most of these incidents occurred at the victim's home, either on the couch in the living room or in the victim's bedroom. Defendant was eventually caught when he abused the victim while her mother was asleep in the same bed. The victim's mother awoke during the abuse. The victim's mother testified that she takes medications that make her sleep deeply at night, but that she awoke on the night in question after hearing what sounded like the snap of a waistband. The victim's mother rolled over in the bed and saw that defendant was laying between her and the victim. The victim's

-1-

mother pulled the blankets off and discovered that the victim was naked from the waist down. Defendant attempted to tell her "that it wasn't what it looked like." Nevertheless, the victim and her mother had defendant's father drive them back to their apartment. The victim's mother then called the police, who spoke with the victim and collected evidence, including a bra, a sweater, and a bedsheet from the victim's bed. Defendant was later arrested.

At trial, defendant's theory of the case was that the victim was lying about the sexual assaults because she wanted to go live with her sister, who was in foster care. Defendant also theorized that the victim's mother was lying about the sexual assaults because she discovered that defendant was messaging other women, at which point defendant attempted to break up with her. However, testimony from a witness qualified as an expert in DNA analysis indicated that semen matching defendant's DNA profile was discovered on the bra and the bedsheet that police collected as evidence. The expert testified that there was a large amount of DNA present, which, in her experience, indicated more than casual contact. She also testified that the sheet had only two DNA profiles present, one that strongly matched the victim's DNA profile, and one that strongly matched defendant's DNA profile. Defendant was thereafter convicted and sentenced as earlier described. This appeal followed.

## II. ANALYSIS

## A. PROSECUTORIAL MISCONDUCT[1]

Defendant argues that the prosecutor committed misconduct on three separate occasions at trial, and that defense counsel was ineffective for failing to object to the prosecutor's behavior. We disagree.

Because defendant did not object to the prosecutor's comments at trial, this claim is unpreserved. *People v Thurmond*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 361302); slip op. at 9. "Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To satisfy the third element, the defendant must show that the error "affected the outcome of the lower court proceedings." *Id*.

Defendant first argues that the prosecutor improperly vouched for the victim's credibility by asking if she was being honest when she was forensically interviewed, when she testified at the preliminary examination, and when she was testifying during the jury trial. In general, the prosecutor is free to argue from the evidence and its reasonable inferences in support of a witness's credibility. *People v Bennett*, 290 Mich App 465, 478; 802 NW2d 627 (2010). To that end, "a

---

[1] We note that "the phrase 'prosecutorial misconduct' has become a term of art in criminal appeals . . . [but] these claims of error might be better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' " *People v Cooper*, 309 Mich App 74, 87-88, 867 N.W.2d 452 (2015).

prosecutor may comment on his or her own witnesses' credibility, especially when credibility is at issue." *Id*. However, "[a] prosecutor cannot vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness." *People v Isrow*, 339 Mich App 522, 529; 984 NW2d 528 (2021) (quotation marks and citation omitted).

Defendant objects to the following exchange between the victim and the prosecutor:

> *Q*. And you are—do you like to remember this stuff?
>
> *A*. No.
>
> *Q*. Is it something you've been trying to forget?
>
> *A*. Yeah.
>
> *Q*. And when [defense counsel] asked you about your conversations with Angela at . . . Voices for Children, you were being honest with her, weren't you?
>
> *A*. Yes.
>
> *Q*. And you were being honest when you testified across the street?
>
> *A*. Yes.
>
> *Q*. And you're being honest when you testified here?
>
> *A*. Yes.

Although defendant takes issue with the prosecutor's line of questioning, the record indicates that defense counsel initially cross-examined the victim about discrepancies in her trial testimony, as well as in her statements during the preliminary examination and the forensic interview. Defense counsel asked the victim, "Isn't it true that you and your mother are lying about this incident?" and the victim responded, "[N]o." "Under the doctrine of invited response, the proportionality of the response, as well as the invitation, must be considered to determine whether the error, which might otherwise require reversal, is shielded from appellate relief." *People v Jones*, 468 Mich 345, 353; 662 NW2d 376 (2003). Reviewing the comments in context, the prosecutor proportionately responded to defense counsel's questioning of the victim's honestly and credibility by asking if she was being honest in her testimony. The questioning was proper and the prosecutor did not suggest that he had special knowledge of the victim's honesty. See *Isrow*, 339 Mich App at 529. Defendant has failed to show plain error in the challenged testimony.

Defendant next argues that the prosecutor improperly asked the jury to sympathize with the victim in his closing argument. "A prosecutor's role within our judicial system is to seek justice and not merely to convict." *People v Meissner*, 294 Mich App 438, 455; 812 NW2d 37 (2011). "Prosecutors have discretion on how to argue the facts and reasonable inferences arising therefrom, and are not limited to presenting their arguments in the blandest terms possible." *Id*. at 456. "A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Id*. (quotation marks and citation

omitted). "However, it is improper for a prosecutor to appeal to the jury's sympathy for the victim." *Id*.

Defendant argues that during closing argument, the prosecutor erroneously appealed to the jury's sympathy by stating:

> [The victim]'s 14. Could you imagine being a 14-year-old girl talking to a police officer? This is not the first time she's had to talk about it. She talked about it on the 14th. She had to talk about it at her forensic interview. She had to be dragged into court for a preliminary exam and she had to come here again today.

However, the prosecutor's remarks must be evaluated in context. See *Brown*, 294 Mich App at 382-383. In full, the prosecutor stated:

> This is a 14-year-old child who's being asked questions from an event, a traumatic event, an embarrassing event, something she's ashamed of, that took place over a year ago. I talked to you in voir dire, of course, she's going to be hesitant. Of course, she's gonna be—she might tell somebody the full story on one day and somebody a—a different story. She might tell, initially, not as much in front of her mom cause she's embarrassed. She doesn't want her mom to hate her; you heard that from her.
>
> You heard from [the victim] this happened a lot in a short period of time, between the window of October 29th and November 14th. She was young. She didn't know what's going on. How can you expect her to be consistent every single time? You can't. She's 14. Could you imagine being a 14-year-old girl talking to a police officer? This is not the first time she's had to talk about it. She talked about it on the 14th. She had to talk about it at her forensic interview. She had to be dragged into court for a preliminary exam and she had to come here again today. Why submit herself to all those questions, all that embarrassment, if it wasn't true? Why would she do that? Why would she put herself through that?
>
> She wanted to get away from her mom, why isn't she allege [sic] allegations against her mother? Wouldn't that be easy? Make up some story about her mother abusing her, pouring hot water on her, doing something, anything to get out of the home. No. She came up with specific allegations against [defendant] and if you believe her you can convict. Convict alone on her testimony.

The prosecutor thus argued, from the evidence, that the jury could draw inferences about why the victim's testimony was inconsistent. See *Bennett*, 290 Mich App at 478. Moreover, defense counsel repeatedly attacked the victim's credibility. The prosecutor is permitted to comment on a witness's credibility when credibility is at issue. See *id*. Although the prosecutor used the term "dragged" to describe the victim needing to be brought in to testify, a prosecutor does not need to use the blandest terms possible to argue the case. See *Meissner*, 294 Mich App at 456.

Even if the prosecutor had committed plain error here, we note that the trial court instructed the jury that the lawyers' statements and arguments were not to be considered as evidence. The court additionally instructed the jury on its responsibility to determine the facts of the case, to

apply the law as given by the court, and to not let sympathy or bias influence their decision. "Jurors are presumed to follow the instructions of the court." *Id*. at 457. Defendant has not provided proof that the jury disregarded the court's instructions or that it convicted him out of sympathy for the victim. He has thus failed to show that he was prejudiced by the prosecutor's statements.

Defendant additionally argues that in his closing argument, the prosecutor blamed defendant for exercising his constitutional right to a fair trial and to confront the witnesses against him by claiming that he "dragged" the victim into court to testify during the preliminary examination and at trial. But when viewed in context, a fair reading of the prosecutor's statement does not indicate that the prosecutor asserted that the jury should punish defendant for exercising his constitutional rights. See *Brown*, 294 Mich App at 382-383. As we have already stated, the prosecutor is not required to argue his case in the blandest of terms. See *Meissner*, 294 Mich App at 456. Here, the prosecutor was simply explaining, based on the evidence presented, why there might be inconsistencies in the victim's testimony. The prosecutor did not argue that defendant should be punished for exercising his rights to a trial or to confront witnesses. Defendant thus cannot show that the prosecutor committed plain error. Again, even if the prosecutor had committed plain error, the court instructed the jury that the lawyers' statements were not to be taken as evidence. Jurors are presumed to follow the court's instructions, *id*. at 457, and we see no indication in the record that the jury erroneously considered the prosecutor's statements as evidence.

Defendant also argues that defense counsel's performance was constitutionally deficient because she failed to object to the prosecutor's improper questioning and closing argument. Defendant failed to preserve his claim of ineffective assistance of counsel by moving for a new trial or a *Ginther*[2] hearing. *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). Accordingly, our review of this claim "is limited to mistakes apparent on the record." *People v Jackson*, 292 Mich App 583, 600; 808 NW2d 541 (2011).

To establish that defense counsel's performance was constitutionally deficient, a defendant must demonstrate that "(1) his trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *People v Uphaus (On Remand)*, 278 Mich App 174, 185; 748 NW2d 899 (2008); see also *Strickland v Washington*, 466 U.S. 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. For the reasons discussed above, defendant has failed to establish that prosecutorial misconduct occurred in this case. "Counsel is not ineffective for failing to advance a meritless position or make a futile motion." *People v Henry (After Remand)*, 305 Mich App 127, 141; 854 NW2d 114 (2014). Accordingly, defendant's argument lacks merit.

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

## B. SENTENCING

Defendant next argues that his 25-year mandatory minimum sentence for CSC-III, which was imposed pursuant to a fourth-offense habitual offender enhancement under MCL 769.12, constituted cruel or unusual punishment. We disagree.

To preserve a claim that a sentence was unconstitutionally cruel or unusual, the defendant must raise the claim in the trial court. *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021). Defendant did not challenge his sentence in the trial court, so this issue is unpreserved. This Court reviews unpreserved issues for plain error affecting a party's substantial rights. *Carines*, 460 Mich at 763. As we have stated, to avoid forfeiture of a claim, "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. As to the third prong, the defendant must show that the error "affected the outcome of the lower court proceedings." *Id*.

"The Michigan Constitution prohibits cruel *or* unusual punishment, Const 1963, art 1, § 16, whereas the United States Constitution prohibits cruel *and* unusual punishment, US Const, Am VIII." *Burkett*, 337 Mich App at 636 (quotation marks and citation omitted). If a punishment is appropriate under the Michigan Constitution, then it also is appropriate under the US Constitution. *Id*. Our Supreme Court has adopted a four-part test to determine whether a sentence is cruel or unusual. *People v Stovall*, 510 Mich 301, 314; 987 NW2d 85 (2022). The test

> assesses (1) the severity of the sentence imposed compared to the gravity of the offense, (2) the penalty imposed for the offense compared to penalties imposed on other offenders in Michigan, (3) the penalty imposed for the offense in Michigan compared to the penalty imposed for the same offense in other states, and (4) whether the penalty imposed advances the penological goal of rehabilitation. [*Id*.]

Even if one consideration weighs against the sentence imposed, other considerations favoring the sentence "may suffice to deflect a cruel and unusual punishment challenge." *People v Fernandez*, 427 Mich 321, 339; 398 NW2d 311 (1986).

"Legislatively mandated sentences are presumptively proportional and presumptively valid." *Burkett*, 337 Mich App at 637 (quotation marks and citation omitted). "In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *Id*. (quotation marks and citation omitted). "Statutes are presumed to be constitutional, and the courts have a duty to construe a statute as constitutional unless its unconstitutionality is clearly apparent." *Id*. (quotation marks and citation omitted).

Here, defendant was sentenced as a fourth-habitual offender under MCL 769.12(1)(a), which provides:

> (1) If a person has been convicted of any combination of 3 or more felonies or attempts to commit felonies, whether the convictions occurred in this state or would have been for felonies or attempts to commit felonies in this state if obtained in this state, and that person commits a subsequent felony within this state, the

person shall be punished upon conviction of the subsequent felony and sentencing under section 13 of this chapter as follows:

> (a) If the subsequent felony is a serious crime or a conspiracy to commit a serious crime, and 1 or more of the prior felony convictions are listed prior felonies, the court shall sentence the person to imprisonment for not less than 25 years. Not more than 1 conviction arising out of the same transaction shall be considered a prior felony conviction for the purposes of this subsection only.

Defendant does not expressly indicate whether he is raising a facial challenge to MCL 769.12(1)(a), or an as-applied challenge. "A facial challenge involves a claim that a legislative enactment is unconstitutional on its face, in that there is no set of circumstances under which the enactment is constitutionally valid." *Burkett*, 337 Mich App at 637-638 (quotation marks and citation omitted). Conversely, "[a]n as-applied challenge . . . alleges a present infringement or denial of a specific right, or of a particular injury in process of actual execution of government action." *Id*. at 638.

To the extent that defendant raises a facial challenge to the statute, his argument is foreclosed in its entirety by this Court's holding in *Burkett*, 337 Mich App 631. There, this Court addressed a facial challenge to the constitutionality of MCL 769.12(1)(a) and upheld the statute as constitutional, stating that "the minimum sentence mandated by MCL 769.12(1)(a) is neither cruel nor unusual." *Id*. at 638-639, 642. Under the rule of stare decisis, we are bound to follow *Burkett*. See MCR 7.215(C)(2) and (J)(1); *People v Bennett*, 344 Mich App 12, 21; 999 NW2d 827 (2022) ("This Court is bound to follow its own published opinions under the rule of stare decisis").

In light of *Burkett*, the only way that defendant can prevail is by showing that MCL 769.12(1)(a) is unconstitutional as applied to him. The analysis of an as-applied challenge to MCL 769.12 requires us to consider the four-factor test set forth in *Stovall*, 510 Mich at 314. Regarding the first factor, concerning the severity of the sentence as compared to the gravity of the offense, defendant argues that MCL 769.12 violates the constitutional prohibition on cruel and unusual punishment because it does not allow the sentencing court to consider individualized factors or mitigating circumstances.

Like the defendant in *Burkett*, 337 Mich App at 338-339, defendant cites *People v Lorentzen*, 387 Mich 167; 194 NW2d 827 (1972), and *People v Bullock*, 440 Mich 15; 485 NW2d 866 (1992), in support of his argument. *Lorentzen* involved the imposition of a 20-year mandatory minimum sentence on a defendant who had no prior convictions. *Lorentzen*, 387 Mich at 170-171. Likewise, the defendant in *Bullock* was given a mandatory sentence of life imprisonment without the possibility of parole for possession of 650 grams or more of cocaine. *Bullock*, 440 Mich at 21. The *Bullock* Court observed that the mandatory minimum applied even though the defendant was a first-time offender. *Id*. at 38. In both cases, our Supreme Court concluded that the mandatory sentences imposed shocked the conscience and were so grossly disproportionate that they amounted to cruel and unusual punishment. *Lorentzen*, 387 Mich at 181; *Bullock*, 440 Mich at 37.

As the *Burkett* Court astutely pointed out, *Lorentzen* and *Bullock* both involved the imposition of mandatory minimum sentences for nonviolent drug crimes without consideration of

the defendant's personal history. *Burkett*, 337 Mich App at 638-639. However, as the *Burkett* Court additionally observed, MCL 769.12 allows the sentencing court to consider a defendant's history of prior felony convictions and overall habit of reoffending. *Burkett*, 337 Mich App at 639. Thus, as was the case in *Burkett*, "we find defendant's comparison of the present case to the circumstances in *Lorentzen* and *Bullock* unpersuasive." *Id*.

Additionally, although defendant's reliance on *Lorentzen* and *Bullock* indicate that he has considered the severity of the sentence imposed, he does little to compare that sentence to the gravity of his own actions. Defendant was convicted of two counts of sexual penetration of a 14-year-old child, triggering the 25-year mandatory minimum. This is distinguishable from *Lorentzen* and *Bullock*, in which the crimes that triggered the mandatory minimums were drug offenses and the minimum sentences applied to defendants who had no prior criminal history. By contrast, in this case, defendant committed sexually assaultive crimes against a child and was sentenced as a fourth-offense habitual offender under MCL 769.12 because he was convicted of a serious felony and had previously been convicted of three or more additional felonies. See *Burkett*, 337 Mich App at 639. We find that a sentence of 25 years is warranted when considering the gravity of the offenses at issue and the facts of this case.

The second *Stovall* factor addresses "the penalty imposed for the offense compared to penalties imposed on other offenders in Michigan[.]" *Stovall*, 510 Mich at 314. Here, defendant again relies on *Lorentzen* and *Bullock*, but ignores that the statutes at issue in those cases required mandatory sentences for nonviolent drug offenses that "did not require a showing of previous criminal activity." *Burkett*, 337 Mich App at 639. In contrast, MCL 769.12(1)(a) mandates a 25-year minimum sentence only when a defendant has been convicted of three or more prior felonies or felony attempts, with at least one of the prior felonies being a specified "listed prior felony," and the sentencing offense is a specific "serious crime." MCL 769.12(1)(a), (6)(a), (6)(c). The imposition of a mandatory sentence under MCL 769.12 in this case was thus "not disproportionate considering the gravity of the offense and the harshness of the penalty." *Burkett*, 337 Mich App at 639-640.

Turning to the third factor, regarding "the penalty imposed for the offense in Michigan compared to the penalty imposed for the same offense in other states," *Stovall*, 510 Mich at 314, defendant compares MCL 769.12(1)(a) with California's "three strikes" law, which was upheld in *Ewing v California*, 538 US 11; 123 S Ct 1179; 155 L Ed 2d 108 (2003). Defendant correctly points out that, unlike MCL 769.12(1)(a), California's law requires that prior felonies be "serious" or "violent" before it applies. *Ewing*, 538 US at 15. In addition, defendant points out that in California, courts may vacate prior felonies if doing so is justified under the circumstances of the case. *Id*. at 17. This Court already addressed *Ewing* in *Burkett* and ultimately concluded that the differences between California's law and MCL 769.12(1)(a) "do not compel the conclusion that MCL 769.12(1)(a) is unconstitutional," given that "Michigan, like California, has an interest in incapacitating and deterring recidivist felons." *Burkett*, 337 Mich App at 642 (quotation marks and citation omitted). We see no cause to depart from that conclusion here.

We last turn to the fourth factor, regarding "whether the penalty imposed advances the penological goal of rehabilitation." *Stovall*, 510 Mich at 314. Defendant argues that the 25-year minimum mandatory sentence does not consider his prospect for rehabilitation. He points out that the author of his presentence investigation report stated that he was "drug free, had stable

employment, obtained his GED, had the ongoing support of his family and has participated in substance abuse treatment both inpatient and outpatient." These are positive facts. However, defendant neglects to mention that he committed the instant offenses after being out on parole for only two months. Thus, while we applaud defendant's sobriety, we acknowledge that it was during the limited two-month period from when he was paroled to when he reoffended. We likewise must acknowledge, just as the trial court did, that defendant is a recidivist. He served five prison sentences prior to this incident. In the end, while we agree that a 25-year mandatory sentence is lengthy, its imposition in this case "reflects a rational legislative judgment, entitled to deference, that offenders who have committed serious or violent felonies and who continue to commit felonies must be incapacitated." *Burkett*, 337 Mich App at 642 (quotation marks and citation omitted). Additionally, unlike a mandatory life-in-prison sentence, where rehabilitation is not a goal, the 25-year mandatory minimum sentence does not preclude rehabilitation. See *People v Adamowicz*, 346 Mich App 213, 230; 12 NW3d 35 (2023).

Ultimately, defendant has failed to present any unusual circumstances that render his sentence disproportionate. See *Burkett*, 337 Mich App at 642. Therefore, the 25-year minimum mandatory sentence requirement is not unjustifiably disproportionate under the circumstances of this case.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Michelle M. Rick
/s/ Kathleen A. Feeney